(No. 56024.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TERRY A. REYNOLDS *et al.*, Appellees.

*Opinion filed February 4, 1983.*

Tyrone C. Fahner, Attorney General, of Springfield, and J. Michael Fitzsimmons, State's Attorney, of Wheaton (Michael B. Weinstein and Michael V. Accettura, Assistant Attorneys General, of Springfield, and Barbara A. Preiner, Assistant State's Attorney, and Sharon S. Broccoli, law clerk, of counsel), for the People.

Robert K. Kilander, of Laraia & Kilander, Ltd., of Wheaton, and Stephen J. Culliton, of Civinelli, Bakalis & Culliton, of Bloomingdale, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, Terry A. Reynolds and Kevin Wright, were arrested and charged with theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1)), burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1(a)), and possession of burglary tools (Ill. Rev. Stat. 1977, ch. 38, par. 19—2(a)). The circuit court of Du Page County allowed defendants' motion to quash the arrest and suppress the evidence seized at the time of the arrest. The appellate court affirmed (101 Ill. App. 3d 576), and we allowed the People's petition for leave to appeal (73 Ill. 2d R. 315).

The facts are adequately stated in the appellate court opinion and will be reviewed here only to the extent nec-

essary to discuss the issues presented. At the hearing on the motion to suppress, defendants called Michael W. Glugla, formerly a police officer for the Hanover Park police department. Glugla testified that on November 25, 1979, while employed and on duty as a police officer for the Hanover Park police department, he observed a station wagon pulling a trailer with inoperative taillights. Glugla activated the red lights on top of his marked police cruiser and stopped the vehicle. As Glugla approached the station wagon from the rear he observed several cartons in the trailer with the word "Magnavox" printed on them. The open trailer was covered with a tarpaulin, but the tarpaulin was not tied down at the back of the trailer. The wind was blowing the tarpaulin in such a manner that Glugla was able to see the boxes as he walked past the trailer. Glugla stated that in the light cast by the spotlight on his squad car and his flashlight he was able to see what was written on the boxes. Glugla approached the driver, defendant Reynolds, and advised him that there was something wrong with the taillights on the trailer. Glugla asked the occupants of the car, defendants Wright and Reynolds, and a third person, Mr. Norman, where they had acquired the equipment in the trailer and their responses differed. No one could produce a bill of lading for the merchandise. The occupants were unable to identify their destination. After Glugla obtained identification from the three occupants of the vehicle, he stepped to the rear of the trailer, out of hearing range of the parties, and through his shoulder-mounted radio ran a check on the occupants, the station wagon, and the trailer. At this time Glugla was again able to view the contents of the trailer. Glugla was advised that there were no warrants on the occupants, that the station wagon was registered to Mr. Norman, and that the trailer was registered to Peckins T.V. store, located in Roselle. Glugla asked his dispatcher to

call the Roselle police department to check on the security of the Peckins T.V. store. Glugla was advised that the Roselle police "had gone by the building and felt it was secure." Glugla then asked defendants to follow him to the police station. He did not tell defendants they were under arrest. Glugla stated that had defendants refused his request to accompany him to the police station, he would not have permitted them to leave because of their inoperative taillights. Defendants followed Glugla to the police station while another police vehicle followed directly behind them. Fifteen to twenty minutes after their arrival at the police station Mr. Peckins arrived and stated that the trailer and its contents belonged to his store and that defendants did not have permission to possess them. Peckins consented to a search of the trailer, which produced several television sets and burglary tools. Glugla testified that although no citation was issued at the scene of the stop a traffic citation did eventually issue on the taillight violation. Glugla admitted that at the preliminary hearing he had made no mention of the inoperative taillights and stated that he did not use a flashlight to view the contents of the trailer. Glugla also admitted that when asked at the preliminary hearing whether he had related all of the conversation that occurred between himself and the defendants he had responded in the affirmative.

After hearing and arguments on the motion to suppress, the circuit court found that the arrest and detention of defendants occurred when Glugla directed defendants to accompany him to the police station and that the arrest was performed without reasonable grounds to believe defendants were committing or had committed an offense. The court ordered that all evidence obtained as a result of the arrest be suppressed. The appellate court affirmed.

The People contend that defendant's compliance with

Glugla's request that they follow him to the police station was voluntary and did not constitute an arrest. They argue that in escorting defendants to the police station Glugla was acting as a safety officer; that he was confronted with a station wagon towing a trailer without taillights, on a busy highway late at night under hazardous weather conditions, and that the only reasonable course of action open to him was to escort defendants to the police station. The People note that Glugla was unable to escort defendants to their destination because defendants were unsure of where they were going and contend that leaving the car and trailer on the side of the road would have created a risk of harm to the articles in the trailer. The People state, too, that the police car which followed defendants from the scene of the stop to the police station served to protect defendants from the danger resulting from their lack of taillights.

In determining whether an arrest took place the question is not simply whether the officer's conduct was reasonable under the circumstances, but whether a reasonable, innocent person in the defendant's situation would have considered himself arrested or free to go. (See *People v. Townes* (1982), 91 Ill. 2d 32; *People v. Wipfler* (1977), 68 Ill. 2d 158.) A reviewing court will not disturb the circuit court's finding on a motion to suppress unless that finding is determined to be manifestly erroneous. (*People v. Holloway* (1981), 86 Ill. 2d 78; *People v. Clay* (1973), 55 Ill. 2d 501, 505.) Defendants did not testify at the hearing on the motion to suppress. Glugla's testimony shows that defendants would not have been free to go had they refused Glugla's request. On this record, we cannot say that the circuit court's determination that an arrest took place was manifestly erroneous.

Nor can we say that the court's finding that the arrest was made without probable cause was manifestly erroneous. As this court stated in *People v. Lippert* (1982),

89 Ill. 2d 171:

"Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. [Citations.] Although a 'mere suspicion' that the person arrested has committed the offense is an insufficient basis for arrest [citations], evidence sufficient to convict is not required [citations]." 89 Ill. 2d 171, 178-79.

The People contend that the information properly obtained as a result of Glugla's brief, investigatory questioning was sufficient to provide a reasonable person with an articulable suspicion that defendants had committed a criminal offense and that the information relayed concerning the Roselle police department's check of the Peckins T.V. store did not negate that articulable suspicion. As indicated in *Lippert*, the probable-cause test is a compromise for accommodating the "often opposing interests" of privacy and law enforcement, and there is good reason for striking the compromise somewhat on the side of privacy where it is uncertain whether any crime has occurred. (*People v. Lippert* (1982), 89 Ill. 2d 171, 179-80.) Regardless of Glugla's suspicion under the circumstances confronting him that criminal activity was afoot, the record shows no known criminal activity at the time of the arrest. As the circuit court noted, Glugla had recorded the information concerning the occupants of the station wagon and their vehicle and this information would be valuable if it was later determined that an offense had been committed. Under the circumstances present here, the detention of defendants until the commission of the crime could be verified cannot be sanctioned.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*