THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL AGNEW, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STUART SMITH, Defendant-Appellant.

Second District    Nos. 2—85—0742, 2—85—0827 cons.

Opinion filed February 26, 1987.

G. Joseph Weller, Michael F. Braun, and Patrick M. Carmody, all of State Appellate Defender's Office, of Elgin, for appellants.

Robert J. Morrow, State's Attorney, of Geneva (William L. Browers, Virginia M. Ashley, and David A. Bernhard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendants, Michael Agnew and Stuart Smith, appeal from their convictions for burglary following a stipulated bench trial. The court sentenced Agnew to four years' imprisonment and Smith to four years' probation and six months in jail, with the stipulation that when an opening was available in the Treatment Alternatives to Street Crimes (TASC) program the six months would be terminated. In this appeal defendants assert that the trial court erred in denying pretrial motions to quash their arrest and to suppress physical evidence and statements obtained subsequent to arrest.

Officer Charles Parker of the St. Charles police department was patrolling in his squad car early in the morning of March 14, 1985.

At approximately 5:12 a.m. he stopped a red 1979 Chrysler for speeding. Stuart Smith was driving the car, and Michael Agnew was riding as a passenger in the front seat. While Parker was preparing a traffic ticket he noticed Agnew push a carton from the passenger's side to the driver's side of the backseat of the Chrysler. After Parker issued the ticket, Smith and Agnew began to drive away. As they did so, Parker shined his flashlight into the backseat area of the car and observed what appeared to be a cardboard box containing cartons of cigarettes.

Parker then contacted Geneva police officer Keith Koza, asked him to be watchful for the Chrysler as it passed through Geneva, and expressed concern about the cigarettes he thought he had seen on the backseat. The officer then went to check a liquor store that had been vandalized the night before and found it secure. Officer Parker later testified that at the time his suspicions were aroused about Smith and Agnew he was aware that other burglaries had occurred recently in the area.

A minute or two later, Officer Koza stopped the red Chrysler in Geneva for several traffic violations and reported the stop over his radio. Koza told Smith he was going to be ticketed and asked Smith and Agnew who owned the cartons of cigarettes in the backseat. Both defendants acted somewhat agitated but told the officer that the cigarettes belonged to a friend in Elgin. They would not, however, give a name or address for the friend. Defendants told Koza they were headed to Aurora.

Officer Dan Figgins, also of the Geneva police department, then arrived. While the officers were speaking, Koza saw the defendants attempt to cover the box of cigarettes with a jacket. The officers again asked Smith and Agnew who owned the cigarettes, and they repeated that they belonged to a friend in Elgin.

A few minutes later Officer Parker, who had heard Koza's radio report of the stop, arrived at the scene. By radio Parker instructed Officer Randall Lies of the St. Charles police department to check the stores on the west side of St. Charles which did a volume of cigarette sales. Parker also ran a check on the car's registration and learned that it was registered to an Agnew of Aurora. Agnew told Parker that the car belonged to him.

Officer Lies reported back to Parker that the west-side businesses were secure. Parker then directed Lies to start checking likely establishments on the east side of town.

It was about this time that Parker arrested the defendants. There was conflicting testimony as to the precise sequence of

events. Parker testified that he asked Smith and Agnew if he and Koza could look in the trunk of the car. Agnew responded by opening the trunk, which contained both boxes of cartons as well as loose cartons of cigarettes. According to Parker, it was then that he placed defendants under arrest. Koza, on the other hand, testified that Parker told defendants they were under arrest before the trunk of the car was opened.

Smith and Agnew were handcuffed, placed in separate police cars, and transported to the St. Charles police station. Officer Koza agreed to wait at the scene for a tow for Agnew's car.

About one minute later, while en route to the police station, Parker received a radio report from Lies of a burglary at an Arco gas station in St. Charles. It is not clear whether Lies mentioned that cigarettes had been taken in the burglary. Parker thought he first learned cigarettes were taken after he arrived at the police station.

An hour or so later, the cigarettes from the car were matched with the cigarettes missing from the Arco' station. Also, later that morning at the police station, Smith and Agnew each gave a statement.

Agnew and Smith's pretrial motions to quash their arrest and suppress physical evidence and statements obtained subsequent to the arrest were denied. For trial purposes, the parties adopted the testimony given at the suppression hearing. Both defendants were convicted and sentenced. They then filed these appeals.

■■ Defendants contend that their arrest should have been quashed because the police lacked probable cause to arrest. The test for probable cause is whether facts and circumstances known to the arresting officer are sufficient to warrant a reasonably cautious person in believing that an offense has been committed and that the individual arrested committed the offense. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165-66, 445 N.E.2d 766.) Mere suspicion that the person arrested has committed an offense is not an adequate basis for arrest. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605.) On review, the circuit court's finding on a motion to suppress will not be disturbed unless that finding is manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.

Defendants in *Reynolds* were stopped for a traffic violation. The officer noticed cartons which appeared to contain merchandise in the open trailer defendants were towing. The occupants of the car gave equivocal and inconsistent answers regarding the source and ownership of the merchandise and could not name their destination. The

officer determined that there were no warrants on the occupants, that the car belonged to one of the occupants, and that a police check had found nothing amiss at the local television store which owned the trailer. Nevertheless, the officer asked the defendants to follow him to the police station. Fifteen minutes later it was learned that the trailer and its contents had been stolen from the television store. On these facts the trial court found that defendants had been arrested without probable cause. The circuit court order quashing defendants' arrest and suppressing all evidence obtained as a result of the arrest was affirmed.

The *Reynolds* court cited *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, for the conclusion that the probable cause test represents a compromise which accommodates the often conflicting interests of privacy and law enforcement and for the proposition that there is good reason to favor the privacy interest where it is uncertain whether any crime has occurred. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766.) The court also specifically noted that the arresting officer had recorded pertinent information about the vehicles and the occupants of the car before he arrested them and that this information could have been utilized if it was later determined that an offense had occurred. The court concluded: "Under the circumstances present here, the detention of defendants until the commission of the crime could be verified cannot be sanctioned." (94 Ill. 2d 160, 166, 445 N.E.2d 766.) We are of the opinion that this comment of the *Reynolds* court applies with equal force to the case now before us.

Smith and Agnew were first stopped by Officer Parker, in St. Charles, for a traffic violation. During the process of issuing a citation, Parker noticed Agnew push a box from one side to the other of the backseat. As defendants were driving away, the officer shined his flashlight into the backseat area just long enough to see a cardboard box containing what appeared to be cartons of cigarettes. Parker then asked Geneva police officer Koza to keep an eye on the car as it passed through Geneva. Once again defendants were stopped, according to Koza's testimony, for a traffic violation. Although both defendants indicated to the officer that the cigarettes belonged to a friend in Elgin, they acted somewhat agitated and would not give a name or address for the friend. They did tell Koza, however, that they were headed to Aurora. It was during this time that Koza noticed the defendants attempting to cover the cigarettes with a jacket.

At this point the officers admittedly were not aware of any of-

fense involving the theft of cigarettes within their own or nearby jurisdictions. Officer Parker, however, upon his arrival at the scene where defendants were stopped, directed Officer Lies by radio to start looking for a possible offense. Lies was told to check businesses which did a volume of cigarette sales on the west side of St. Charles. When Lies reported those establishments to be secure, he was told to make a similar check on the east side of town.

Officer Parker testified that the night before this incident involving Smith and Agnew, a rock had been thrown through the window of a St. Charles liquor store, that a burglary had occurred at a gas station in the area approximately a month earlier, and that other burglaries had occurred in the area. Parker also indicated that after he let the defendants go in St. Charles, but before he responded to Officer Koza's report of a stop, he checked the east-side liquor store that had been damaged the night before and found it secure.

All the while Officer Lies was searching for a break-in, burglary, or similar occurrence in St. Charles, defendants were being detained on the street in Geneva. During this time, Parker received from Koza identification on Agnew, learned that the car was registered to an Agnew of Aurora, and heard Agnew state that the car belonged to him. Officer Parker had already noted the license number and other pertinent information regarding the vehicle, as well as identification information regarding the driver, when he stopped the car in St. Charles.

There was conflicting testimony as to whether the defendants were arrested before or after the officers looked into the trunk of the car and saw still more cigarettes. Regardless of whether or not the officers were aware of the cigarettes in the trunk of the car, though, they still had not been apprised that an offense of the type they were looking for had been committed when defendants were placed under arrest. When asked by Agnew's defense counsel what he arrested Agnew for, Parker responded: "For further investigation of a possible crime."

It was not until after the defendants had been handcuffed and placed in separate squad cars, arrangements had been made to tow the defendants' car, and the trip to the St. Charles police station had begun that Officer Parker learned of a burglary at a gas station in St. Charles. Even then, it is not clear that the officer was simultaneously informed that cigarettes were involved in the burglary. Parker himself thought he was back at the police station when he first learned cigarettes had been taken.

■ We believe that the facts of this case show that Officer

Parker had a hunch, and little more, that defendants had stolen the cigarettes found in their car. It appears that he arrested defendants in the belief and hope that his hunch would prove correct. Although the officer's observations may have been enough to raise his suspicions, those suspicions should have been allayed by the fact that an Agnew owned the car, the assurances from Lies that the west-side businesses were secure, and his own previous check of one east-side establishment which sold cigarettes in volume. Moreover, like the officer in *Reynolds*, Parker gathered adequate identification information on both the vehicle and its occupants prior to arrest to use in locating and identifying them if an offense was later discovered. While the facts and circumstances known to Parker may have been enough to warrant his hunch, they were not sufficient to warrant the kind of belief in defendants' guilt which would justify their arrest at that time. *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605.

The preliminary police procedure at the stop in Geneva was proper under the authority of the Illinois statutes (Ill. Rev. Stat. 1985, ch. 38, par. 107—14.) However, the police overstepped their bounds when they arrested defendants, handcuffed them, and started the drive back to St. Charles before they learned of the break-in. Had the officers waited at the scene for a short time longer, quite probably the arrest would have been proper. Unfortunately, they acted prematurely.

We find the argument that there was an imputation of knowledge of Officer Lies to the other officers at or before the arrest to be unsupportable. We find it unnecessary to address any remaining issues as to probable cause. Accordingly, we find the arrest of the defendants to be illegal.

Having concluded that the defendants' arrest was illegal, we must determine whether the statements and the physical evidence resulting from the illegality were obtained by exploitation of the illegality or, instead, by means sufficiently distinguishable to be purged of the primary taint, thereby permitting the introduction of the otherwise inadmissible evidence at trial. *Brown v. Illinois* (1975), 422 U.S. 590, 598-99, 45 L. Ed. 2d 416, 424, 95 S. Ct. 2254, 2259; *Wong Sun v. United States* (1963), 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417.

In determining whether evidence is obtained by exploitation of an illegal arrest several factors must be considered: whether *Miranda* warnings were given, the temporal proximity of the arrest and statement, the presence of intervening factors, and the purpose

and flagrancy of the official misconduct. (*Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.) In *Brown*, the defendant, who had been arrested without probable cause and without a warrant, made two in-custody inculpatory statements after being given the *Miranda* warnings. The United States Supreme Court held that the *Miranda* warnings, by themselves, do not always purge the taint of an illegal arrest and that other factors, cited above, must also be considered. The Supreme Court considered these factors and concluded that the statements were inadmissible, finding that the first statement was separated from defendant's illegal arrest by less than two hours and without any significant intervening event to break the causal connection between the illegality of the arrest and the statement; that the second statement was the result and the fruit of the first; and that the illegal arrest was investigatory, both in design and execution, and purposely undertaken in the hope that some evidence might turn up to justify Brown's illegal arrest.

■ Application of the factors set forth in *Brown* to the facts of the instant case shows that the evidence in question should have been suppressed. We note first that, like *Brown*, the *Miranda* warnings were given to the defendants prior to the taking of their statements. Further, defendants, Smith and Agnew, agreed by stipulation at the suppression hearing that their statements did not result from any coercion, threats, or physical force asserted against them. However, as in *Brown*, the giving of *Miranda* warnings could not alone purge the taint of the illegal arrest.

Also, the length of time between the defendants' arrest and their statements was not of such a lengthy duration as to dissipate the taint. Defendants were arrested at approximately 5:35 a.m. "for further investigation of a possible crime," handcuffed, and transported to the St. Charles police department, arriving there at approximately 5:45 a.m. They were booked, surrendering their personal belongings and their boots from which later in the day glass fragments were extracted and found to be similar to the refracted indices of glass broken at the Arco gas station. Within 2½ to 3 hours of their arrest, both Smith and Agnew gave oral statements admitting complicity in the burglary. We do not believe the temporal proximity between the illegality, the arrest, and the derivative thereof, the statements, was significant, nor do we think the causal chain was broken by any intervening event of significance.

The State contends, however, that the discovery of the burglary one minute after defendants' arrest was an intervening significant

circumstance sufficient to meet *Brown's* standards because it provided the probable cause necessary to arrest defendants. We disagree. Accepting the State's position would permit an officer to first arrest an individual and then try to find an offense with which to charge him. Constitutional violations would result from such a position.

It is clear from the testimony presented at the suppression hearing that at the time of defendants' arrest Officer Parker had no knowledge that a burglary had occurred in the area. The fact that he learned of such a burglary almost immediately thereafter does not alleviate his mistake. Also, conflicting testimony was presented by Koza and Parker as to whether the arrest occurred before or after the car trunk was opened, revealing a large quantity of cigarettes. Thus, it was possible that the arrest was made not only absent any knowledge of a crime but also absent any incriminating evidence other than a box containing what Parker believed to be cartons of cigarettes in the backseat of the car.

The State maintains that the most important factor to be considered under *Brown* is the nature of the police misconduct and that flagrant conduct was absent in this case. As illustrated by our discussion above of the officers' conduct, we believe their conduct, although not as flagrant as the police conduct in *Brown*, was conscious and sufficient to bring it within the parameters of *Brown*.

From our application of the *Brown* factors to the evidence presented at the suppression hearing, we conclude that the nexus between the illegal arrest and the acquisition of the physical evidence and statements from the defendants was not so attenuated as to dissipate the primary taint. Defendants' suppression motions should have been granted.

Accordingly, for all the reasons stated above, we reverse the judgment of the circuit court of Kane County and remand this case for a new trial.

Reversed and remanded.

NASH and REINHARD, JJ., concur.