THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEJANDRO MATA, Defendant-Appellant.

First District (1st Division) No. 85—3635

Opinion filed June 27, 1988.—Rehearing denied January 31, 1989.

MANNING, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan E. Disis, and Leon N. Stiles, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Alejandro Mata, was arrested on the charge of residential burglary. Following a bench trial, defendant was convicted and subsequently sentenced to a term of 10 years' incarceration in the Illinois Department of Corrections. Defendant now appeals his conviction.

At trial, the evidence established that at approximately 2:40 a.m. on March 4, 1985, Chicago police officer James Petrauskas saw the defendant, Mata, walking east on 20th Street toward Halsted, carrying a 19-inch television set on his shoulder. Officer Petrauskas then observed Mata enter a building at 2000 South Halsted. At that point, the officer parked his car and followed Mata up to the third floor of the building, where he entered an apartment. Officer Petrauskas knocked on the door and Mata answered it. Petrauskas identified himself and asked Mata why he had been carrying a television set down the street at that hour. Mata replied that he had been watching a television show at a friend's home and the friend had let him take the television home so that he could finish watching the show. Officer Petrauskas then asked Mata who the friend was and Mata could not remember the friend's name or address, but agreed, voluntarily, to show the officer where the friend lived.

Officer Petrauskas then took the television set and both he and Mata proceeded in the police car to the place Mata directed, 1718 South Newberry Street. At 1718 South Newberry, Officer Petrauskas knocked on both the front and back doors of the house but no one answered. He further noticed that there were no foot tracks, either in the front or the back of the house, in the two inches of snow that had recently fallen. Another officer who had arrived to assist also determined that no one was home when he knocked on the door. At this point, Officer Petrauskas handcuffed Mata and placed him in the police wagon of the assisting officer.

While Mata was in transit to the 12th District police station, a call came over the police radio advising the officers of a residential burglary at 1819 South Peoria, approximately 1½ blocks from where Mata was initially seen carrying the television.

At the police station, Officer Petrauskas inspected the television and noted that the initials "PDS" and a serial number were scratched into the back of the set. Thereafter, a police sergeant advised Officer Petrauskas that the television had been reported stolen from 1819 South Peoria by Paul Sebron, who later that day identified that television as the set which he reported stolen.

At trial, Sebron testified that he knew the defendant by the name of "Jesse." Sebron also stated that the defendant had been in his home the night before the burglary until approximately 1 a.m., when Sebron left to attend church services. He said that he secured all doors and windows when he left. However, when Sebron returned at 3:30 a.m. the front window of his apartment was open, the bedroom window was broken, the lights were on, wood chips were in the snow by the open window, and there were footprints by both the open window and the bedroom window. Sebron further testified that he followed the footprints in the snow and found that they led to the corner of 18th Street and Peoria. Sebron then called the police to report the theft.

Mata testified at trial that he bought the television, which he knew to be stolen, from a man he did not know on the street at 17th and Newberry for $45. Mata said that he did not, at that time, know the set was Sebron's, and he further denied telling the officer that he borrowed the television from a friend. Based upon all the evidence, the trial court found Mata guilty of residential burglary and sentenced him, after a hearing in aggravation and mitigation, to 10 years' incarceration.

Mata argues on appeal that the trial court erred when it denied his motion to quash his arrest and suppress the evidence obtained as a result of his arrest. He contends that the police did not have probable cause to detain and arrest him at 2000 South Halsted Street, since, at that point, the officer only knew that Mata had a television which he claimed was loaned to him by a friend, and accordingly, there was no probable cause to make an arrest. Thus, Mata asserts that since no probable cause existed for the arrest at 2000 South Halsted, any evidence obtained as a consequence of the illegal arrest should have been suppressed, i.e., the television set. The State, on the other hand, argues that the trial court properly determined that Mata was arrested at the Newberry Street address, and that he was not arrested at the Halsted Street address. The State specifically asserts that there was adequate articulable suspicion to stop and detain Mata at 2000 South Halsted and that the totality of the circumstances established probable cause to arrest Mata after the investigation at 1718 South Newberry.

Additionally, Mata also argues in his appeal that, even if probable cause did exist for his arrest, the State did not prove him guilty beyond a reasonable doubt of residential burglary. The State, again, disagrees contending that the evidence presented, along with the inferences therefrom, was enough to establish defendant's guilt beyond a reasonable doubt.

Mata also contends that the trial court should have allowed the arrest report to be admitted as evidence because it stated that he was arrested at his home at 2000 South Halsted and, thus, constituted a prior inconsistent statement of the police officer which could have been used to impeach the officer. The State argues that the report was hearsay and not conclusive of where the arrest occurred nor was it impeaching, and furthermore, since the defendant did not raise the issue until the post-trial motion, it was waived. Mata's final argument is that the trial court erred by sentencing him to the Illinois Department of Corrections rather than allowing him alternative treatment under the Alcoholism and Substance Abuse Act (TASC program) (Ill. Rev. Stat. 1985, ch. 111½, par. 6301 et seq.). The State, however, claims that Mata was ineligible for the TASC program.

■ The first issue raised by Mata is whether Mata was properly detained at 2000 South Halsted and whether probable cause existed for his arrest. The view we take of the occurrences involved differs somewhat from both the contentions of the defendant, Mata, and the State. We initially note that the standard of review for the legality of the detention and arrest is manifest error. (People v. Agnew (1987), 152 Ill. App. 3d 1037, 1040, 504 N.E.2d 1358, 1360.) A stop, like an arrest, comes within the purview of a fourth amendment seizure, which requires that the seizure be reasonable. (United States v. Sharpe (1985), 470 U.S. 675, 84 L. Ed. 2d 605, 105 S. Ct. 1568.) In Terry v. Ohio (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, the United States Supreme Court recognized an exception to the probable cause requirement for arrests or seizures of the person for brief investigative detentions or stops which do not rise to the level of a full arrest. (People v. Hardy (1986), 142 Ill. App. 3d 108, 113, 491 N.E.2d 493, 497, citing Terry v. Ohio (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The Terry exception, which is codified in Illinois, was based on the justifications that the investigatory stop is less intrusive than the full arrest and that the government has a legitimate interest in the prevention and detection of crime. (See Hardy, 142 Ill. App. 3d at 113, 491 N.E.2d at 497; Ill. Rev. Stat. 1985, ch. 38, pars. 107—14, 108—1.01.) Under Terry, the stop must be objectively reasonable and the officer must be able to point to "specific and articula-

ble facts," which, taken together with the rational inferences therefrom, reasonably warrant the intrusion. (*Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) Under Illinois' interpretation of the *Terry* requirements, an officer is allowed to briefly detain a person for the purpose of investigating possible criminal activity. *Hardy*, 142 Ill. App. 3d at 113, 491 N.E.2d at 497.

The distinction between an arrest and a stop lies in the length of time the person is detained and the scope of the investigation which may follow the initial encounter. (*Hardy*, 142 Ill. App. 3d at 114, 491 N.E.2d at 497-98.) The general rule in Illinois is that the officer's suspicions must be allayed within a reasonable time, and if they are not, the officer must either make a full arrest or allow the person to leave. *People v. Roberts* (1981), 96 Ill. App. 3d 930, 934, 422 N.E.2d 154, 157.

■ In this case, the initial detention at 2000 South Halsted was not an arrest or even a *Terry*-type of detention, since, as the record reflects, Mata voluntarily accompanied Officer Petrauskas from the Halsted Street address to the Newberry Street address, and he was not restrained in any way at that time. Upon arrival at the Newberry Street address, the officer verified that no one was at the address and that it appeared from the condition of the scene that no one had recently been there. This information, coupled with the officer's initial observation of Mata carrying a 19-inch television set down the street at 2:40 a.m., and his unusual explanation which had now been found to be without any basis, constituted sufficient and articulable facts which, at this time, we find warranted, at the very least, an investigative detention of Mata at 1718 South Newberry Street. Officer Petrauskas then handcuffed Mata and placed him in the police wagon. Shortly after Mata was placed in the wagon, and while en route to the police station for further investigation, the burglary that had occurred in the 2000 South Halsted area was reported over the radio. Under these circumstances, where Officer Petrauskas had properly detained Mata for further investigation, a subsequent arrest of Mata and seizure of the television set as evidence would surely have been proper and legal.

To accept defendant's argument that the initial detention was invalid because the officer did not yet know the specific crime that had been committed would be directly contrary to the goals of *Terry* to encourage crime prevention and detection where there is reasonable suspicion that a crime has been committed. A trained police officer is given a great deal of latitude in assessing the "whole picture" based upon the totality of the circumstances, including considerations of

modes or patterns of operation of certain kinds of lawbreakers and various practical, objective considerations in determining whether there is reasonable suspicion that a crime has been committed. See *United States v. Cortez* (1981), 449 U.S. 411, 419, 66 L. Ed. 2d 621, 629-30, 101 S. Ct. 690, 695-96.

A somewhat similar situation was presented in *People v. Vena* (1984), 122 Ill. App. 3d 154, 460 N.E.2d 886. There, the defendant was initially stopped because he and two companions reportedly "looked suspicious" as they wandered through a residential backyard in Lincolnshire. Upon seeing the police, all three men fled. The police stopped and searched the defendant and found a knife and flashlight on his person. Defendant, at that point, was handcuffed, placed in the police car, and taken to the Lincolnshire police station. Soon after arrival at the station, a report of a burglary in the area was reported. The court found that the defendant's detention and transportation to the station, before verification of a specific crime, was properly part of the *Terry* stop there since the period of time of the stop was minimally intrusive when compared to the benefit of immediate investigation. (*Vena*, 122 Ill. App. 3d at 162, 460 N.E.2d at 892.) The *Vena* court found that this conclusion did not contradict the rationale of either the United States Supreme Court's or the Illinois Supreme Court's holdings concerning *Terry* stops. (See *Vena*, 122 Ill. App. 3d at 164, 460 N.E.2d at 890; see also *People v. Rodriguez* (1987), 153 Ill. App. 3d 652, 505 N.E.2d 1314. *Cf. United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074.) Moreover, this court has recently determined that police officers need not have actual knowledge of a criminal violation before they can effect an arrest if the facts of the case give rise to a reasonable belief that a crime has been committed. See *People v. Hobson* (1988), 169 Ill. App. 3d 485, 495, 525 N.E.2d 895, 901 (Rizzi, J., specially concurring).

■ In any event, we also believe that the arrest of Mata at the Newberry Street address, under all the circumstances, was sufficiently supported by probable cause here. Probable cause for an arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605, 608, *cert. denied* (1982), 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92.) Probable cause does not require evidence sufficient to convict, but it requires more than articulable suspicion. (*People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) Police officers often must act upon a quick appraisal of the data before them,

and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals. (*Robinson*, 62 Ill. 2d 273, 342 N.E.2d 356.) Moreover, our supreme court recently stated:

"The courts, in striking a balance between the need to protect citizens from invasions of their privacy at the whim of police officers and the countervailing need to allow leeway for efficient enforcement of the laws, are sensitive to the fact that policemen must often make their decisions to arrest or not to arrest under ambiguous circumstances and must exercise their judgment, at the risk of making a mistake. 'In dealing with probable cause, *** as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *People v. Cabrera* (1987), 116 Ill. 2d 474, 485, 508 N.E.2d 708, 712, *cert. denied* (1987), 484 U.S. 929, 98 L. Ed. 2d 257, 108 S. Ct. 297, quoting *People v. Moody* (1983), 94 Ill. 2d 1, 7-8, 445 N.E.2d 275, 278.

▮ Examining the totality of the circumstances here, there can be little doubt that Officer Petrauskas had probable cause to arrest Mata at the Newberry Street address and would have been derelict in not doing so. As stated above, the officer observed Mata carrying a 19-inch television down the street at approximately 2:30 a.m. and, when questioned, Mata stated that he had borrowed the set from a friend so that he could finish watching a television program. This, in itself, was an unusual explanation, and it became more unusual when Mata could not remember the friend's name or address. Nonetheless, the officer took the proper steps to confirm or deny his suspicions when Mata voluntarily agreed to show the officer where the friend lived. At that location, where the officer inspected the scene and found no one home and an absence of tracks at the front and back doors, the officer correctly and reasonably concluded that Mata's explanation was unbelievable since no one had recently entered or exited that location. (See *People v. Hobson* (1988), 169 Ill. App. 3d 485, 495, 525 N.E.2d 895, 901 (Rizzi, J., specially concurring).) At that point, Mata was handcuffed and placed in the police wagon for transit to the station. While en route to the police station, Officer Petrauskas' belief was confirmed when the officers were informed that a burglary had been committed in the area where Mata was initially observed. Additionally, the criminal background of Mata, including his two prior arrests and the outstanding warrant for his probation viola-

tion, which was obtained through the Chicago police department records, also served to confirm the officer's original suspicions and support the basis for the arrest. (*Cf. People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708.) In view of these facts, and considering the officer's experience in dealing with lawbreakers, we believe that Officer Petrauskas had probable cause to arrest Mata since it was, in such a situation, probable that Mata had stolen the television.

■ The second issue raised by Mata is whether the State proved him guilty beyond a reasonable doubt. A trier of fact can infer a defendant's guilt of the crime of burglary from the defendant's exclusive, unexplained possession of stolen property if: (1) there was a rational connection between his recent possession of property stolen in the burglary and his participation in the burglary; (2) his guilt of burglary is more likely than not to flow from his recent, unexplained, exclusive possession of burglary proceeds; and (3) there was evidence corroborating his guilt. (*People v. Housby* (1981), 84 Ill. 2d 415, 424, 420 N.E.2d 151, 155, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160.) Sufficient corroboration may, however, be presented to support an inference of guilt from mere possession of stolen property if the defendant himself offers an explanation for his possession that the trier of fact finds to be false. *Housby*, 84 Ill. 2d at 430, 420 N.E.2d at 159.

■ Here, Mata was seen carrying the 19-inch television down the street at approximately 2:40 a.m. The burglary was discovered and reported at approximately 3:30 a.m. Mata initially told the officer he borrowed the set from a friend, whose name and address he could not remember. At trial, Mata claimed that he bought the set from someone he did not know, on a street corner.

Where a defendant is tried without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge. A reviewing court will not substitute its judgment for that of the trial court unless the finding is based on insufficient or unsatisfactory evidence. (*People v. Cokley* (1977), 45 Ill. App. 3d 888, 890, 360 N.E.2d 545, 547.) The trial court obviously found the defendant's explanation to be unbelievable, and we will not substitute our judgment for that of the trial court on review.

Accordingly, we conclude that the trial court's finding that Mata was found guilty beyond a reasonable doubt for residential burglary was proper and based upon sufficient evidence under the circumstances presented.

■ Defendant next argues that the trial court improperly refused

to admit the arrest report since it was substantive evidence establishing that he was arrested in his home at 2000 S. Halsted, and not at 1718 S. Newberry. He further claims that, in any event, it was admissible as a prior inconsistent statement of the officer who testified at trial that he arrested Mata at 1718 S. Newberry. Arrest reports are generally inadmissible as evidence, but they may be used as a means to impeach a witness. (*People v. Wilson* (1984), 123 Ill. App. 3d 798, 463 N.E.2d 890.) The arrest report cannot be admitted as evidence of where the arrest occurred, since that is a legal conclusion to be determined by a court, based on probable cause, which we have determined here to have occurred en route to the police station. (See *People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708.) Any error which may have occurred as to impeaching the officer with the report is harmless error. The fact that the officer testified the arrest occurred at 1718 S. Newberry and his report stated it occurred at 2000 S. Halsted is of no consequence in light of this court's determination of where the arrest legally occurred based upon the facts of this case.

 Finally, Mata claims that the trial court erred by refusing alternative treatment under sections 21 and 23 of the Alcoholism and Substance Abuse Act. Those sections require the court to advise a defendant, whom the court reasonably believes may be an addict, of the possibility of treatment as an alternative to incarceration. (See Ill. Rev. Stat. 1985, ch. 111½, pars. 6321, 6323.) However, a court can properly deny alternative treatment if it finds that (1) the addiction and the crime are not significantly related or (2) incarceration is necessary for the protection of the public. Here, the court found that the relationship between the addiction and the crime was questionable, and the fact of the outstanding warrant for the defendant's arrest for violation of his probation at the time of his arrest rendered alternative treatment inappropriate here. Accordingly, we find that a proper basis existed for the sentence of incarceration and the denial of alternative treatment in this instance.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

O'CONNOR, J., concurs.

JUSTICE MANNING, dissenting:

I respectfully dissent. While I concur in the majority's holding that the State proved the defendant guilty beyond a reasonable

doubt, it is my belief that the evidence by which this burden was sustained was the fruit of an illegal seizure of the person of defendant Mata. Consequently, I disagree with the majority that Mata's warrantless arrest was an "investigative detention" approved by the goals of *Terry* or that his arrest was supported by probable cause. Accordingly, I dissent from the majority's decision that the conviction should be affirmed.

"The requirement of probable cause has roots that are deep in our history." (*Henry v. United States* (1959), 361 U.S. 98, 100, 4 L. Ed. 2d 134, 137, 80 S. Ct. 168, 170.) The motivating force leading to the adoption of the fourth amendment was antagonism towards seizures predicated on a mere suspicion. I respectfully suggest that the police officer in the case at bar was armed only with a mere suspicion and had insufficient facts upon which to base a full-fledged arrest.

I feel it is incongruous for the majority to state that the act of restraint, *i.e.*, handcuffing the defendant and transporting him to the police station, was on the one hand not an arrest but merely an investigative detention pursuant to *Terry* and on the other hand to say that it was an arrest based on probable cause. The issue in this case is whether the handcuffing and transporting of the defendant to the police station constitutes an arrest and, if so, whether there was probable cause for the arrest.

The fourth amendment, applicable to the States through the fourteenth amendment (see *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090, 81 S. Ct. 1684, 1691), provides: "The right of the people to be secure in their persons *** against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ***." (U.S. Const., amend. IV, quoted in *Dunaway v. New York* (1979), 442 U.S. 200, 207, 60 L. Ed. 2d 824, 832, 99 S. Ct. 2248, 2253.) It is clear that the defendant was "seized" when he was handcuffed and placed in the squadrol and transported to the 12th district police station. Because this seizure took place prior to verification that a crime had been committed, and in the absence of sufficient evidence of a criminal offense, I believe that there was no probable cause to arrest defendant as a perpetrator, since such a seizure is proscribed by the fourth and fourteenth amendments.

As noted by the majority, the difference between an arrest and a stop lies not in the permissible restraint of the person but rather in the length of time the person may be detained and the scope of the investigation which may follow the initial encounter. (*People v.*

*Hardy* (1986), 142 Ill. App. 3d 108, 114, 491 N.E.2d 493, 498.) In determining whether a detention is unreasonable, the court must consider the brevity of the detention, the purposes served by the stop and the time reasonably needed to effectuate those purposes as well as whether the police diligently pursued a meaningful investigation that was likely to confirm or dispel their suspicions quickly. *People v. Runnion* (1986), 150 Ill. App. 3d 879, 884, 502 N.E.2d 439, 443.

I believe that the evidence indicates, and the trial court properly found, that when the defendant was removed from the squad car, handcuffed and placed into the police wagon the investigatory phase blossomed into a full-fledged arrest requiring probable cause. However, it was not until the defendant had been handcuffed, placed into the patrol wagon and was en route to the police station that the officer learned that a burglary had taken place. Even then, the officer was not informed that a TV set had been involved in the burglary. At that point the defendant's detention resembled a traditional arrest and a reasonable man, under those circumstances, would not believe that he was free to go. The officer arrested the defendant with absolutely no evidence that a crime had been committed. Had he proceeded back to the defendant's home with defendant in the patrol car, free of handcuffs, he no doubt would have learned of the burglary during the return drive to Halsted Street and could have made inquiries while en route to determine if a 19-inch Sony TV had been stolen. Unfortunately, he arrested the defendant prematurely. While I agree with the majority that the police had sufficient reason to detain the defendant for investigation, the officer's actions exceeded the limits of a *Terry* stop. The arresting officer had a number of minimally intrusive investigative alternatives available to him that he did not utilize which could have been performed in the vicinity of Newberry Street and which did not require the transportation of the defendant in handcuffs to a police station. He could have interrogated the defendant, confirmed his identity and investigated his background or attempted to verify. whether a crime had been committed. (See *People v. Vena* (1984), 122 Ill. App. 3d 154, 161-62, 460 N.E.2d 886, 892.) Had a minimum of investigation been performed, the officer might have learned of the outstanding warrant on the defendant and most probably would have learned that a burglary had taken place. This record is devoid of any evidence that suggests the police officer had knowledge of any outstanding warrant. In fact, the only reference in the record to the warrant occurred at the sentencing hearing. In light of the fact that no effort was made to expeditiously confirm or dispel the officer's suspicions on Newberry Street,

I believe that the handcuffing and transporting of the defendant was no longer a permissible detention pursuant to *Terry*, but rather a seizure requiring probable cause.

Accordingly, I disagree that the police had probable cause to arrest the defendant at that point. Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer are sufficient for a man of reasonable caution to believe that an offense has been committed and that the person arrested has committed it. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165-66, 445 N.E.2d 766, 769.) An arrest based on a hunch or mere suspicion of the officer, before the commission of a crime is verified, cannot be sanctioned. (*People v. Rodriquez* (1987), 153 Ill. App. 3d 652, 659, 505 N.E.2d 1314.) Nor can an illegal arrest be justified by the subsequent discovery of incriminating evidence, and any evidence seized pursuant to such an arrest must be suppressed. *People v. Sanchez* (1982), 107 Ill. App. 3d 240, 248, 437 N.E.2d 744, 751.

In the present case, at the time the defendant was placed under arrest, the officer had no knowledge that a crime had been committed. There is no evidence that he had knowledge of a series of crimes having been recently committed in the area, nor was there evidence that the particular area was a high crime area. Not only had the defendant not fled from the police, but had voluntarily accompanied them. They knew his identity and knew where he lived. At that point, the only facts in the possession of the officer were that defendant was carrying a TV set to his home at 2:40 a.m., that he had allegedly borrowed the set from a friend, that no one answered the door of the house defendant took him to on Newberry and the officer's belief that no one had entered or left the house because he saw no footprints in the snow. A fact totally ignored both by the trial court and the majority was that the evidence indicates that the snow had "commenced about two hours before" the officer saw the defendant, and "it was snowing pretty hard—it was a pretty nasty night out." The officer further testified that when he observed the defendant he was wet. Although the trial court made no specific findings of fact that the snowfall was continuing during the occurrence in question, the logical inference from the testimony was that it was snowing at the time of the officer's encounter with defendant, and hence, would explain why there were no footprints in the walkway at 1718 Newberry. In support of its finding that the detention of Mata in the case at bar was proper, the majority cites *People v. Vena* (1984), 122 Ill. App. 3d 154, 460 N.E.2d 886, which held that detention and transportation to the station of suspects before verification

of a specific crime is not contradictory to the rationale of the United States and Illinois Supreme Courts regarding *Terry* stops. That case is distinguishable from the instant case in that the three suspects there were trespassing through a residential backyard and upon seeing the police they fled. In this case the defendant was at a place where he had a right to be, he voluntarily accompanied the officer, he attempted to cooperate with him, he did not flee nor did he attempt to flee, the officer knew or could have easily determined his identity and he knew the location of defendant's residence.

In *People v. Hobson* (1988), 169 Ill. App. 3d 485 (Rizzi, J., specially concurring), another case cited by the majority, the factual matrix is equally as distinguishable from the facts herein. In that case the officers had within a 20-day period recovered two stolen and stripped vehicles near defendant's residence in Chicago and trails of antifreeze had been found leading from the recovered automobiles to the garage behind defendant's residence. In addition, they observed defendant back a car into the garage, they ran a computer check on the license plate number of that car and determined it was registered to a residence in Evanston, saw the car within 15 minutes of arrival sitting on milk crates minus two tires and hub caps, and most importantly, the defendant, when he saw the officers, attempted to get past them, but they grabbed him. These two cases cited by the majority are totally distinguishable from the case at bar.

Based upon the foregoing facts, I conclude that the officer was acting on no more than a hunch or a bare suspicion that a crime had been committed, that a hunch is insufficient to constitute probable cause and that the officer acted prematurely in arresting defendant. Therefore, I would hold that the trial court's denial of the motion to quash and suppress evidence was manifestly erroneous.

Accordingly, I would reverse the judgment of the trial court.