THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADOLPH ERBY, JR., Defendant-Appellant.

Second District   No. 2—89—0694

Opinion filed May 10, 1991.

G. Joseph Weller and Sherry R. Engelstad, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Michael L. Shevick, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Following a bench trial conducted in the circuit court of Du Page County, defendant, Adolph Erby, Jr., was convicted of the offense of forgery based on his illegal use of a credit card (Ill. Rev. Stat. 1989, ch. 38, par. 17—3(a)(1)), and an extended-term sentence of eight years' imprisonment was imposed.

On appeal, defendant contends that the circuit court improperly denied his motion to suppress evidence for two reasons: (1) the investigative stop of defendant was conducted by police without a reasonable and articulable suspicion that defendant had engaged in criminal activity; and (2) there was not probable cause to arrest defendant.

The original charge against defendant was filed on February 9, 1989, and alleged that, on February 8, 1989, defendant used a credit card belonging to Dora J. Barnes with the purpose and intent to defraud. Defendant filed a motion to suppress the evidence gathered as a result of the allegedly illegal stop and arrest of defendant. A hearing on the motion was conducted on June 2, 1989.

The only witness testifying at the hearing was Officer Bradley Bloom, a seven-year veteran and a sergeant of the Hinsdale police department. Officer Bloom testified that, at approximately 10:16 p.m. on February 8, 1989, he was travelling in his squad car in the vicinity of Ogden Avenue and York Road when he observed a Buick automobile in "beater condition" in the parking lot of the Shell Mini-Mart located at the intersection of York and Ogden. The Buick was parked in the northeast portion of the lot next to the pay telephone and approximately 25 feet east of the station's gas pumps. Officer Bloom did not see anyone inside the Buick until he pulled his squad car into the Shell Mini-Mart lot. Officer Bloom then saw a person kneeling on the

front seat of the Buick placing three cartons of cigarettes into the backseat. The person in the car, whom Officer Bloom identified as defendant, was a black man wearing a red baseball cap. Officer Bloom felt the situation "looked like something out of the ordinary" and determined that he would investigate.

Officer Bloom parked his squad car immediately adjacent to the Buick but did not park in front of the Buick or otherwise block its path. Prior to getting out of his car, Officer Bloom turned on his alley light to illuminate the interior of the Buick. As Officer Bloom approached the Buick, defendant slid from the driver's side to the passenger side of the car's front seat and, without being asked, rolled down the window. Officer Bloom observed a white plastic bag in the backseat which appeared to be stuffed with cartons of cigarettes.

Officer Bloom asked defendant where he obtained the cigarettes, and defendant replied, "from a friend in Aurora." When Officer Bloom asked the name of this friend, defendant said he could not remember it, nor could defendant remember where in Aurora his friend lived. Defendant could not remember his friend's telephone number but stated that he had the number written down at home. Officer Bloom described defendant's response when defendant was asked where in Aurora he had gotten the cigarettes:

"He just said, 'In Aurora.'
I said, 'Well, exactly where?'
He just said, 'In Aurora.' "

Defendant told Officer Bloom that the cigarettes were for a pool hall he owned in Chicago. Officer Bloom then asked defendant if he could examine the cigarettes, to which defendant replied, "[s]ure." Defendant then got out of the passenger side door of the two-door Buick, and Officer Bloom pushed the passenger seat forward and removed the bag of cigarette cartons from the backseat. After examining the bag of cigarette cartons while standing outside the car, Officer Bloom saw that there were approximately 24 cartons in the bag displaying tax stamps from a variety of locations, including some from Cook County. On the top of the bag were one carton of Pall Mall cigarettes and two cartons of Kool cigarettes. Officer Bloom was able to read a tax stamp on one of the cartons which read, "ACA Management, Store No. 17, 149 East Ogden Avenue, Hinsdale." Officer Bloom recognized the address as that of an Amoco station directly across the street from the Shell Mini-Mart. Defendant stated that he had not been to the Amoco station.

At this point, Officer Bloom returned to his car and summoned another officer to the scene. Defendant returned to his car and re-

mained there. Officer Bloom did not tell defendant to stay, and defendant did not ask to leave. Approximately one minute later, the other officer arrived. Officer Bloom directed the officer to proceed to the Amoco station across the street to see whether anyone had just purchased three cartons of cigarettes. Less than five minutes later, the officer radioed back to Officer Bloom that, according to the clerk at the Amoco station, a black man wearing a red baseball cap had just purchased one carton of Pall Mall cigarettes and two cartons of Kool cigarettes using an Amoco credit card issued to Dora A. Barnes. The man signed the receipt, "D. Barnes."

Officer Bloom then placed defendant under arrest for the following reasons:

> "Number one, that Mr. Erby had told me he had never been in the Amoco Station; that the cigarettes had had a stamp on the marked 'ACA Amoco' or 'ACA Management, 149 East Ogden Avenue, Hinsdale,' and the fact that the credit card was used with the name of Dora A. Barns [sic].
>
> Mr. Erby had already identified himself *** with the name Adolph Erby, and at that point he was still in possession of the cigarettes."

The trial court found that Officer Bloom had probable cause to arrest defendant and denied the motion to suppress evidence.

The case proceeded to a bench trial. The parties stipulated to Officer Bloom's testimony at the suppression hearing as well as the testimony of the officer who went to the Amoco station and Dora Barnes. Defendant offered no evidence. Defendant was found guilty.

■ Defendant's first contention on appeal is that Officer Bloom effected an investigatory stop of defendant without a reasonable and articulable basis to believe he may have committed a crime. We note that, in reviewing a ruling on a motion to quash arrest and suppress evidence, a reviewing court will not reverse the trial court's denial of the motion unless it was clearly erroneous. *People v. Henderson* (1990), 142 Ill. 2d 258, 293.

■ ■ Pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, a police officer may make a valid investigatory stop, absent probable cause for an arrest, provided that the officer's decision is based on specific, articulable facts which warrant the investigative intrusion. (*Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1879-80.) Before reaching the reasonableness of the officer's investigative intrusion, however, we must first determine the point at which a seizure occurred. It is only at the point a seizure occurs that the fourth amendment is implicated (*People v. Clark* (1989), 185 Ill. App. 3d 231, 235-36,

541 N.E.2d 199) and when the police officer is required to have a particularized and objective basis for suspecting the person of criminal activity (*Michigan v. Chesternut* (1988), 486 U.S. 567, 576, 100 L. Ed. 2d 565, 573, 108 S. Ct. 1975, 1981). The objective test to determine whether there is a seizure is that an individual is seized only if, in view of all the circumstances surrounding the incident, a reasonable person would believe he was not free to leave. (*Chesternut*, 486 U.S. at 573-74, 100 L. Ed. 2d at 572, 108 S. Ct. at 1979.) This test states a necessary, but not a sufficient, condition for seizure. *California v. Hodari D.* (1991), 499 U.S. ____, 113 L. Ed. 2d 690, 111 S. Ct. 1547.

■ Defendant contends, citing *People v. Hunt* (1989), 188 Ill. App. 3d 359, 544 N.E.2d 118, that, in the instant case, a seizure took place once Officer Bloom shined his alley light into defendant's vehicle and approached the vehicle for purposes of investigation. We disagree with this argument and the decision in *Hunt*. Merely approaching a parked vehicle and asking questions of the occupants does not constitute a seizure, and it is also permissible to request that the occupant roll down the window. (*Clark*, 185 Ill. App. 3d at 237, 541 N.E.2d at 203; see also *People v. Long* (1983), 99 Ill. 2d 219, 230-31, 457 N.E.2d 1252.) Additionally, shining a light into a vehicle, especially a parked vehicle as is the case here, does not constitute a stop absent coercion or a threat of coercion by police officers. (See *People v. Holdman* (1978), 73 Ill. 2d 213, 220-21, 383 N.E.2d 155.) We note that this is not a situation where, for example, the officer utilized his flashing police lights as a show of authority. (See 3 W. LaFave, Search & Seizure §9.2(h), at 417 (2d ed. 1987).) Under the particular circumstances here, we conclude that the shining of the alley light onto defendant's vehicle was not coercive and did not constitute a seizure.

■ We similarly do not believe that a seizure occurred at the point Officer Bloom asked defendant if he could examine the bag of cigarette cartons resting in the backseat of defendant's car. In the present context, a request to search, standing alone, is not conclusive on the question of whether a seizure has occurred. (3 W. LaFave, Search & Seizure §9.2(h), at 413 (2d ed. 1987 & Supp. 1991).) A person voluntarily cooperating with the police is not seized for fourth amendment purposes. (See *People v. Mata* (1988), 178 Ill. App. 3d 155, 160, 533 N.E.2d 370.) The objective test focuses on the coercive effect of police conduct as a whole, not on particular details of that conduct in isolation. (*Chesternut*, 486 U.S. at 573-74, 100 L. Ed. 2d at 572, 108 S. Ct. at 1979-80.) Here, we do not find that Officer Bloom's conduct rose to the level of a seizure merely because he asked, and received permission, to look at defendant's bag of cigarette cartons. A

reasonable person would not necessarily feel that he was not free to leave at this point.

■■ The investigation became more intrusive when Officer Bloom summoned another police officer to the scene to assist in further investigation and when Bloom remained at the Shell Mini-Mart with defendant. Although Officer Bloom never told defendant he could not leave, a reasonable person might well have felt that he was not free to leave at that point in time. However, even if we assume, *arguendo*, that a seizure occurred at this point, we believe that Officer Bloom was possessed of sufficiently specific and articulable facts justifying the brief detention of defendant at that time.

In the instant case, it was defendant's own responses to Officer Bloom's questioning which provided specific and articulable facts supporting a subsequent brief detention. Defendant had in his possession 24 cartons of cigarettes, an amount greater than would normally be carried for personal use. Defendant explained that he obtained the cigarettes from a friend in Aurora, but the cartons, as evidenced by tax stamps from various locations, appeared to be of diverse origin. Moreover, the fact that defendant was initially observed placing three cartons into the bag suggests that his statement that the cigarettes came from Aurora was untrue. Defendant denied going to the Amoco station across the street, yet one of the tax stamps bore the address of the station. Finally, defendant's inability to recall the name, address, or telephone number of the person in Aurora from whom he purportedly obtained the cigarettes created more doubt as to the veracity of his statements.

■ If a suspect's explanation of suspicious activity is known to be false in some respects, there is reason to continue the detention to investigate the explanation. (*Mata*, 178 Ill. App. 3d at 160, 533 N.E.2d at 374; 3 W. LaFave, Search & Seizure §9.2(f), at 382 (2d ed. 1987).) Here, we believe that Officer Bloom properly detained defendant for the few minutes necessary for another officer to cross the street to the Amoco station and investigate defendant's explanation of the suspicious activity described above.

Defendant's next contention is that Officer Bloom did not have probable cause to arrest him. Defendant notes that, at the time of the arrest, Officer Bloom knew only that a man matching defendant's description had been in the Amoco station and had purchased cigarettes with a credit card belonging to Dora A. Barnes. Placing great emphasis on the fact that Officer Bloom did not know that the credit card was stolen or that Barnes had not given defendant permission to use the card, defendant contends that Officer Bloom's arrest was "noth-

ing more than a hunch based on ambiguous conduct and inconsistent answers to interrogation."

■ Probable cause to arrest exists where the police have knowledge of facts which would lead a reasonable person to believe a crime has been committed by the person arrested. (*People v. Foster* (1987), 119 Ill. 2d 69, 83, 518 N.E.2d 82.) Although a mere suspicion that the person has committed the offense is an insufficient basis for arrest, evidence sufficient to convict is not required. (*Foster*, 119 Ill. 2d at 83, 518 N.E.2d at 87.) A trial court's finding of probable cause to arrest will not be set aside on review unless it is manifestly erroneous. *Foster*, 119 Ill. 2d at 83, 518 N.E.2d at 87.

Here, Officer Bloom knew that a black man wearing a red baseball cap had just purchased one carton of Pall Mall cigarettes and two cartons of Kool cigarettes at the Amoco station across the street from where defendant's car was parked. Defendant, a black man who was wearing a red baseball cap, was seen placing three cartons of cigarettes, later found to be one carton of Pall Malls and two cartons of Kools, into a bag in the backseat of his car, and one of the cartons bore a tax stamp with the address of the Amoco station. Thus, Officer Bloom was aware of facts strongly indicating that defendant was the man who purchased the cigarettes using the credit card issued to Dora A. Barnes.

Although Officer Bloom did not know at that time that Barnes' credit card was stolen or that defendant used it without her permission, defendant's conduct was inconsistent with an innocent, authorized use of the card. An arrestee's answers to police questioning may properly be taken into account in examining probable cause (*United States v. Ortiz* (1975), 422 U.S. 891, 897, 45 L. Ed. 2d 623, 629, 95 S. Ct. 2585, 2589), and responses which are false, implausible or conflicting may well constitute probable cause when considered together with prior suspicions (2 W. LaFave, Search & Seizure §3.6(f), at 65-66 (2d ed. 1987); see also *Mata*, 178 Ill. App. 3d at 162, 533 N.E.2d at 375-76). Although it was apparent that defendant had purchased the cigarettes at the Amoco station, he denied ever being at the station. By signing the credit card with the name, "D. Barnes," rather than with his own name, defendant gave Officer Bloom further reason to believe that his use of the card was unauthorized.

■■ Defendant correctly notes that the probable cause test is a compromise for accommodating the often opposing interests of privacy and law enforcement and that "there is good reason for striking the compromise somewhat on the side of privacy where it is uncertain

whether any crime has occurred." (*People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766.) In striking this balance, however, courts are also sensitive to the fact that policemen must often make the decision to arrest under ambiguous circumstances. (*People v. Cabrera* (1987), 116 Ill. 2d 474, 485, 508 N.E.2d 708.) It is not always essential that the police officer have actual knowledge that a crime has been committed so long as the facts give rise to a reasonable belief that a crime has been committed. (*Mata*, 178 Ill. App. 3d at 161-62, 533 N.E.2d at 375.) We believe that the circumstances here were sufficient to lead a reasonable person to believe that a crime had been committed by defendant.

We conclude that the trial court's findings that the investigatory detention and subsequent arrest of defendant were permissible are not manifestly erroneous. Therefore, we reject defendant's contention that the evidence produced from the detention and arrest should have been suppressed.

The judgment of the circuit court is affirmed.

Affirmed.

INGLIS and UNVERZAGT, JJ., concur.