THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDIBERTO RODRIQUEZ, Defendant-Appellant.

Second District   No. 85—0867

Opinion filed March 18, 1987.

G. Joseph Weller .and Michael F. Braun, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Robert J. Biderman and Kenneth R. Baumgarten, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Following a bench trial, defendant, Ediberto Rodriquez, was found guilty of possession of burglary tools (Ill. Rev. Stat. 1983, ch. 38, par. 19—2(a)) and misdemeanor theft (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(d)(1)) and found not guilty of burglary. He was sentenced to a two-year term of probation and a $100 fine on the former offense and was sentenced to a concurrent one-year term of probation for the latter offense.

On appeal defendant contends (1) that his statements and certain physical evidence obtained as a direct result of his arrest without probable cause should have been suppressed, and (2) that he was not proved guilty of possession of burglary tools beyond a reasonable doubt.

Prior to trial, defendant filed a motion to suppress his confessions, alleging that after his arrest he gave oral statements to the arresting officer without being given the *Miranda* warnings and later gave a written statement which was the direct result of the improper oral statements. He sought suppression of both his oral and written statements. Defendant also filed a motion to quash arrest and suppress evidence, both asserting he was arrested without probable cause and seeking the suppression of his oral and written statements as well as other physical evidence taken as a result of his arrest.

At a pretrial hearing on both motions, Elmhurst police officer Stanley Ciochon testified that he was on patrol at approximately 2 a.m. on September 3, 1984, when he noticed a yellow van making a U-turn in the Churchville Junior High School parking lot. He saw the van, unoccupied, about 45 minutes later, parked in an alley behind a shopping center. He checked the license registration by radio and found out that the van was registered to defendant at a Chicago address. A city of Chicago vehicle sticker was in the window. Ciochon shined his flashlight inside the van, revealing two bicycles and one pair of bolt cutters. A fence separated the alley from a residential neighborhood, and a gate in the fence was open. The neighborhood lately had been plagued by a rash of garage burglaries where bicycles, snowmobiles, and toolboxes were taken. His suspicion aroused, Ciochon radioed for assistance, and four more squad cars arrived at the scene and began a search of the area. About 15 minutes later, Ciochon received a radio message that an attendant at a nearby gasoline station had reported seeing three Mexican-American males running through nearby backyards. Ciochon hid in a parking lot across the street from the shopping center. Five minutes later he observed defendant coming from the area of the backyards and walking towards the van. The uniformed officer yelled for defendant to stop. Defendant then changed direction and began walking briskly on York Road toward a nearby Holiday Inn. Ciochon eventually grabbed defendant by the arm in the middle of York Road and escorted him to where the van was parked. Ciochon questioned defendant, both while returning to the van and while standing near the van, about what defendant was doing in the area. Defendant stated that he was looking for a friend's house, that he was the owner of the van, and that

the van had broken down and was leaking water. Defendant stated that he then had gone to find a friend who lived nearby, but could not remember the friend's name or exactly where he lived. Ciochon did not observe any water leaking from the van onto the pavement.

Ciochon's commander, Sergeant Leonard Wright, also arrived, and defendant was given *Miranda* warnings and then handcuffed and placed in the rear of Ciochon's squad car. Defendant was willing to talk and was questioned about the bicycles. Defendant stated that he was driving his van for his friends, who were out to burglarize garages, but that he had nothing to do with the burglaries. He said the bicycles in the van were his. At the station, defendant was turned over to Detective Gary Fuller. Defendant subsequently made additional inculpatory statements which were later reduced to writing. Defendant showed Fuller and Ciochon the garage from which a bicycle was taken immediately before Ciochon initially saw the van.

Defendant testified that after he was stopped by Ciochon he was taken back to the van and slammed against a wall and questioned. He was then placed in the squad car, handcuffed, and driven around the area looking for the other persons with him. He was questioned while in the squad car, but was never advised of his right to an attorney. Later, at the station, he gave a written statement, but again was never advised of his right to an attorney.

Sergeant Wright testified that he saw Ciochon grab defendant by the arm, bring him to the van, and briefly question defendant about what he was doing in the area. He heard Ciochon advise defendant of the *Miranda* warnings, after which defendant was handcuffed and placed in the squad car. Defendant was not told he was under arrest, but Wright felt defendant was not free to leave.

The trial court denied the motion to suppress the confessions. The court, however, quashed the arrest, finding that while the stopping of defendant was proper, the detention and questioning while walking to the van and near the van was "beyond the scope of where this stop occurred" and was without probable cause for defendant's arrest. The court further determined that Ciochon's prior observations inside the van would not be suppressed, as that occurred prior to the arrest. In a later ruling, the court refused to suppress evidence of the identification of the stolen bicycle by the owner, apparently finding that the connecting up of this evidence would have resulted from further investigation anyway, and refused to suppress the oral and written statements, as they had been given after defendant was properly advised of his *Miranda* rights.

At trial, it was stipulated that the testimony of Ciochon and

Wright at the suppression hearing could be used in evidence without further testimony from them. It was also stipulated that the bolt cutters were recovered from the van. Officer Gary Fuller testified that he questioned defendant at the police station and that defendant gave a written statement admitting both to driving the van for his friends and to seeing one of them coming back to the van with a bicycle and placing it in the van. He knew the friends were going to get something, but he didn't know what. Defendant showed him the garage from where the bicycle had been taken. The garage was found to be owned by Mr. and Mrs. Puchalski. Mrs. Puchalski testified that on the date in question, after being notified by the police, she discovered that a bicycle ordinarily in the garage was missing and later saw it at the Elmhurst police station. Another officer testified to being present at the station when defendant gave his statement to Officer Fuller. Defendant offered no evidence.

The trial court entered a not guilty judgment on the burglary of the Puchalski garage and found defendant guilty of both the misdemeanor theft by obtaining control over the bicycle under such circumstances as would reasonably induce him to believe the property was stolen and the possession of burglary tools.

The first issue raised on appeal by defendant relates to the trial court's finding that the arrest was without probable cause and the trial court's refusal to suppress statements and evidence seized from the van following the illegal arrest. Defendant contends that the statements and physical evidence seized or gained as a result of the illegal arrest are suppressible as "fruit of the poisonous tree." (See *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407; see also *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Townes* (1982), 91 Ill. 2d 32, 435 N.E.2d 103.) The State does not directly respond to this contention. Instead, the State asserts only that there was probable cause for defendant's arrest. We shall address this argument first.

■ It is clear that the initial stopping of defendant by Officer Ciochon was reasonable in the *Terry*-stop context under the circumstances. The van, which had been spotted at 2 a.m., was found unoccupied some 45 minutes later in an area where garage burglaries had been recently reported. The gate was open leading to a residential area near where the van was parked. The van was licensed to a Chicago address. Two bicycles and bolt cutters were observed inside the van. Bicycles had been among the items reported stolen in the recent burglaries. Three Mexican-American males were then reported to have been seen running through nearby backyards in this early morn-

ing hour. Shortly thereafter, defendant, of apparent Mexican-American descent, was observed walking toward the van and changed direction and walked briskly away when yelled at by Ciochon. At that time, he was stopped by Ciochon.

■ A police officer, in appropriate circumstances and in an appropriate manner, may approach an individual for purposes of investigating possible criminal behavior even though there is no probable cause to arrest, provided, however, that the officer's decision to stop is based on specific and articulable facts which, when combined with rational inferences from those facts, reasonably warrant the investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906-07, 88 S. Ct. 1868, 1879-80; *People v. Long* (1983), 99 Ill. 2d 219, 227-29, 457 N.E.2d 1252; *People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886.) Here, Officer Ciochon reasonably inferred from the circumstances that defendant was committing, was about to commit, or had committed an offense and was justified in stopping defendant for temporary questioning. (See Ill. Rev. Stat. 1983, ch. 38, par. 107—14.) Defendant has not raised any argument to the contrary.

■ While the trial court apparently found that Ciochon could not properly take defendant back to the van from where he stopped defendant in the middle of York Road, this was only a short distance away and was entirely proper under the circumstances. Section 107—14 of the Code of Criminal Procedure of 1963 allows for such detention and temporary questioning "in the vicinity of where the person was stopped." (Ill. Rev. Stat. 1983, ch. 38, par. 107—14.) Movement of a suspect in the general vicinity of the stop is permissible without converting what would otherwise be a temporary seizure into an arrest. (3 W. LaFave, Search and Seizure sec. 9.2(g), at 393-94 (1987).) The next critical question, however, is whether following the temporary questioning on the way to the van and near the van, the actions of the police in advising defendant of the *Miranda* rights, handcuffing defendant, and placing him in the squad car constituted an arrest without probable cause.

■ An individual has not been arrested unless the circumstances are such that a reasonable man would conclude that he was not free to leave. (*People v. Wright* (1985), 111 Ill. 2d 128, 145, 490 N.E.2d 640; *People v. Eddmonds* (1984), 101 Ill. 2d 44, 61, 461 N.E.2d 347; see *Florida v. Royer* (1983), 460 U.S. 491, 502, 75 L. Ed. 2d 229, 239, 103 S. Ct. 1319, 1326.) The handcuffing of defendant and placing him in the back of the squad car following the admonishment of his *Miranda* rights is, under the circumstances, such that a reasonable man would conclude he was not free to leave. (See *People v. Wright*

(1985), 111 Ill. 2d 128, 145, 490 N.E.2d 640; *People v. Gabbard* (1979), 78 Ill. 2d 88, 93, 398 N.E.2d 574; *People v. Eyler* (1985), 132 Ill. App. 3d 792, 803, 477 N.E.2d 774.) Even Sergeant Wright considered that defendant was not free to leave. Defendant had not resisted the officers, nor was his previous attempt to walk away when initially spotted by police sufficient to utilize the type of restraint here to accomplish lawful detention and temporary questioning. Defendant was never informed that he could leave or that he was not under arrest. (See *People v. Townes* (1982), 91 Ill. 2d 32, 37, 435 N.E.2d 103.) While not all circumstances of handcuffing and placement in a squad car will constitute an arrest (see *People v. Vena* (1984), 122 Ill. App. 3d 154, 161-62, 460 N.E.2d 886), an arrest clearly occurred under the circumstances present in this case once defendant was informed of his *Miranda* rights and placed in the squad car while handcuffed.

■ The next pertinent inquiry is whether there was probable cause to arrest defendant. Probable cause exists where the police have knowledge of facts which would lead a reasonable man to believe that a crime has occurred and that it has been committed by the defendant. (*People v. Wright* (1985), 111 Ill. 2d 128, 145, 490 N.E.2d 640.) At the time of defendant's arrest, the police only knew that defendant was coming from the backyards of an area in the early morning hours where previous garage burglaries had occurred involving stolen bicycles and others were seen running in the backyards. The van defendant was driving contained two bicycles and bolt cutters, and defendant initially gave inconsistent and evasive answers for his reason for being in the area. While we have concluded above that this was sufficient to legally detain defendant, there was only a suspicion that criminal activity was afoot, and no known criminal activity was determined at the time of the arrest. (See *People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766.) Where the police merely suspect defendant has committed a crime and arrest him before commission of the crime is verified, the arrest cannot be sanctioned. *People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766; *People v. Agnew* (1987), 152 Ill. App. 3d 1037; *People v. Hardy* (1986), 142 Ill. App. 3d 108, 113-16, 491 N.E.2d 493.

■ This does not mean the police are powerless to act. The suspect under the circumstances here may be reasonably detained while it is determined if in fact an offense has occurred in the area, a process that might involve checking certain premises. (3 W. LaFave, Search and Seizure sec. 9.2(f), at 378-79 (1987); see *People v. Agnew* (1987), 152 Ill. App. 3d 1037; *People v. Vena* (1984), 122 Ill. App. 3d 154, 161-65, 460 N.E.2d 886.) Nonetheless, under the facts in the in-

stant case, defendant's arrest was without probable cause and was improper. Although defendant made an admission to Officer Ciochon of some involvement and knowledge of what his friends were up to, this occurred sometime after his arrest and cannot be used to support probable cause for the prior arrest.

■ A reviewing court will not disturb the circuit court's finding on a motion to suppress unless that finding is determined to be manifestly erroneous. (*People v. Holloway* (1981), 86 Ill. 2d 78, 91, 426 N.E.2d 871.) Here, the trial judge did find the arrest was not supported by probable cause, albeit that we disagree with some of his reasoning. We may affirm the trial court when correct for any reason appearing in the record even though its decision may be based on improper reasoning. *People v. Merz* (1984), 122 Ill. App. 3d 972, 976, 461 N.E.2d 1380.

■ The trial judge, however, did not suppress the defendant's statements following his arrest, nor did he suppress evidence thereafter seized from the van and subsequent testimonial evidence resulting from the statements and seizure of evidence. This is the focus of defendant's appellate contention in which he maintains that it was error not to suppress this evidence and that the evidence was obtained by exploitation of the illegality rather than by means sufficiently distinguishable to be purged of the primary taint, thereby permitting the introduction of the otherwise inadmissible evidence at trial. See *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Townes* (1982), 91 Ill. 2d 32, 435 N.E.2d 103.

The State, as we have previously indicated, has not responded to this contention on appeal. As the State has not sought to sustain the decision of the trial court on any basis other than that argued, we will assume the State does not now disagree with the defendant's position on this question and has waived any contrary contention. (See *People v. Haag* (1979), 80 Ill. App. 3d 135, 137, 399 N.E.2d 284.) This is particularly so because the State has the burden of showing the evidence is admissible under these circumstances. See *Brown v. Illinois* (1975), 422 U.S. 590, 604, 45 L. Ed. 2d 416, 427-28, 95 S. Ct. 2254, 2262.

■ ■ Even considering this issue on the merits, we would not reach a contrary result. Although the trial court denied defendant's separate motion to suppress his statements based on his allegations and testimony that the *Miranda* warnings were not properly given, the rule is that administering the *Miranda* warnings does not automatically purge the taint of an illegal seizure (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Townes* (1982), 91 Ill. 2d 32, 39, 435 N.E.2d 103), and the trial court's

ruling on the separate motion to suppress the statements does not control whether the statements should have been suppressed as the fruits of an illegal arrest (see *People v. Franklin* (1987), 115 Ill. 2d 328). Here, defendant's statements followed closely after his illegal arrest without any intervening circumstances and should have been suppressed. (See *People v. Franklin* (1987), 115 Ill. 2d 328; *People v. Agnew* (1987), 152 Ill. App. 3d 1037.) Further, any other evidence seized or resulting from the illegal arrest must also be suppressed. Because this improper evidence was used at trial, we must reverse defendant's convictions for misdemeanor theft and possession of burglary tools and remand the cause for a new trial.

■ Defendant's remaining issue presented on appeal is whether the State failed to prove beyond a reasonable doubt that he committed the offense of possession of burglary tools. He contends there was no evidence that he possessed the bolt cutters "with an intent to enter a building." Although we reverse the conviction for this offense and remand for a new trial for the reasons stated above, we still must address defendant's contention that the evidence at the first trial was insufficient, otherwise we risk subjecting defendant to double jeopardy. *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.

To sustain a conviction for possession of burglary tools the prosecution must prove (1) that the tools are adapted and designed for breaking and entering, (2) that defendant possessed them with knowledge of their character, and (3) that he intended to use them for breaking and entering. (*People v. Faginkrantz* (1960), 21 Ill. 2d 75, 79, 171 N.E.2d 5; *People v. Obrochta* (1986), 149 Ill. App. 3d 944, 952, 500 N.E.2d 1059.) Defendant's challenge only goes to the proof of the element of his intent to use the bolt cutters for breaking and entering. He argues that while the bolt cutters are useful in snapping locks or chains that might be used in securing bicycles to bicycle racks, trees or other objects, they have little, if any, use in breaking and entering. We disagree.

■ The proofs indicate that the intention of defendant and his friends was to steal bicycles and to break into garages to accomplish this purpose. It can be inferred from the evidence that the bolt cutters would assist them primarily if a bicycle were chained to some object. However, the bolt cutters could also be used to cut chains or locks on outside storage sheds where bicycles are frequently kept or locks on fences in areas attached to a house or a garage which constitute a part of the building. The statute provides that the burglary tool be suitable for use in breaking into "a building * * *, or any depository designed for the safekeeping of property, or any part thereof, with in-

tent to enter any such place and with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1983, ch. 38, par. 19—2(a).) Under the proofs at defendant's trial, we find there was sufficient evidence to convict him of possession of burglary tools.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for a new trial consistent with the holdings in this opinion.

Reversed and remanded.

INGLIS and UNVERZAGT, JJ., concur.