THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN RAY HENRY, Defendant-Appellant.

First District (3rd Division)   No. 1—86—2861

Opinion filed September 19, 1990.

Randolph N. Stone, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Kenneth T. McCurry and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, John Ray Henry, was charged by information with theft of a motor vehicle and possession of a stolen motor vehicle. After a bench trial, the trial judge found defendant guilty of both offenses. Defendant was sentenced to three years' imprisonment on the possession offense, the theft offense having merged into that offense. He appeals.[1]

The evidence at trial revealed that defendant took a 1979 Cadillac from the parking lot of a 7-11 store at 106th and Cicero in Oak Lawn, Illinois, on March 5, 1986. The owner of the car had left it with its engine running. Defendant was identified by the store cashier as the individual who entered the Cadillac and drove it away. After responding to the car owner's call, Oak Lawn police officer James Martin broadcast a radio message regarding the theft.

Shortly thereafter, Hickory Hills police officer Jeffrey Jamraz, who was patrolling in the vicinity of 87th and Roberts Road, heard the message regarding the stolen Cadillac. Upon hearing the message, Officer Jamraz observed the Cadillac in a gas station and he parked behind it. The car pulled out of the gas station, and Jamraz stopped it about a block away. Upon approaching the car, Jamraz asked the driver, defendant, for his driver's license. Defendant responded that

---

[1]This court previously reversed defendant's conviction under Supreme Court Rule 23 (107 Ill. 2d R. 23) solely on the basis of the unconstitutionality of the possession of stolen motor vehicle statute (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1). That judgment was reversed by the supreme court's reversal of the judgment in *People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1228. On remandment, we now address the remaining issues raised by defendant.

he did not have it on him. Jamraz then asked defendant if the Cadillac were his. Defendant said it belonged to a friend. Jamraz asked defendant his friend's name. After defendant failed to respond, Jamraz placed him under arrest. After reading defendant his rights, Jamraz asked him who the car belonged to and defendant stated he did not know. Jamraz then asked defendant where he got the car and defendant told him that he saw the car while walking down 106th and Cicero and decided to take it for a joyride.

## I

On appeal, defendant first contends that the State failed to prove beyond a reasonable doubt that he intended to permanently deprive the Cadillac's owner of its possession, a necessary element for both a theft and a possession of stolen motor vehicle conviction. Specifically, defendant cites the following as proving that, instead, he merely intended to take the car for a joyride: (1) his statement to Officer Jamraz to that effect; (2) the car had been left with its engine running; (3) he was stopped within 15 to 20 minutes of taking the car; and (4) the lack of any evidence that he obtained possession of the car forcibly, either by breaking into it or by using burglary tools to gain entry.

Defendant's argument is meritless. Intent to permanently deprive may be inferred simply from the act of taking another's property. (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 449 N.E.2d 568.) That intent may also be inferred from the lack of any evidence of an intent to return the property or to leave it in a place where the owner could safely recover it. (*People v. Eatherly* (1979), 78 Ill. App. 3d 777, 397 N.E.2d 533.) In *Eatherly*, defendant abandoned the car in which he was allegedly joyriding when it became stuck in a swamp. Defendant, here, was forced to surrender possession and control of the car only upon being stopped by a police officer. Moreover, while an inference of an intent to permanently deprive may be rebutted by proof of an incompatible state of mind, the finder of fact is not required, in light of the totality of the circumstances shown by the evidence, to accept the defendant's version of the facts. (See *Heidorn*, 114 Ill. App. 3d 933, 449 N.E.2d 568.) In this case, the totality of the circumstances supports defendant's convictions.

The first fact in the totality of the circumstances which we believe tends to indicate defendant's intent to permanently deprive the Cadillac's owner of the vehicle is the fact that he was arrested, as he concedes, just 15 to 20 minutes after he took the Cadillac near the intersection of 87th and Roberts Road. That intersection, according to

the uncontradicted testimony of Officer Martin, is about seven to eight miles from 106th and Cicero. Another crucial fact in that totality tending to prove the requisite intent on defendant's part is his act of driving away from the gas station when Officer Jamraz pulled in behind him. However, the most crucial facts therein relate to what defendant did once he was stopped by the officer. Defendant first told the officer that he did not have his driver's license when, in fact, it had been suspended. Defendant then told the officer that the car belonged to a friend and stood mute when asked his friend's name. After being placed under arrest, defendant told the officer he did not know to whom the car belonged. This last statement was undoubtedly true. Moreover, defendant had a right, at this point, to refuse to answer any of the officer's questions. However, having decided to answer the officer, defendant took the risk that the inference permissible from this half-truth, *viz.*, that he intended to permanently deprive the car's owner of it, could be used against him in a court of law. *Cf. People v. Price* (1967), 81 Ill. App. 2d 111, 225 N.E.2d 453 (intent to permanently deprive automobile's owner thereof was proved where defendant, when arrested, claimed he was owner of car, produced a sales contract containing owner's name and claimed he had borrowed the car from him but, at trial, denied any knowledge of the car and where car was found many miles from where the owner had parked it four days before).

Moreover, we find unavailing the facts or nonfacts upon which defendant relies in support of a finding of mere joyriding. None of those facts or nonfacts, except for defendant's statement to Officer Jamraz that he was joyriding, are incompatible with the offenses of which he was convicted. As to defendant's statement to Officer Jamraz, we have already noted that a finder of fact is not required to accept a defendant's version of the facts.

The only case law upon which defendant relies is *People v. Woods* (1974), 17 Ill. App. 3d 835, 308 N.E.2d 856. *Woods*, which involved a defendant who pleaded guilty to the offense of theft of an automobile, dealt, in pertinent part, with whether the trial court had complied with Supreme Court Rule 402(c). (107 Ill. 2d R. 402.) This rule requires a trial court to determine that there is a factual basis for a guilty plea before accepting the plea. In deciding the issue, the appellate court noted that when the trial court had sought to determine whether the defendant understood the nature of the charge against him, the defendant had stated that he and his friends were going joyriding on the night of the offense. The court reasoned that the defendant's use of the term "joyriding" suggested that the intent ele-

ment of the offense of theft did not exist. The court thus concluded that, because the trial court had relied entirely upon the defendant's statement to establish a factual basis for his guilty plea, it had not complied with rule 402(c). *Woods*, 17 Ill. App. 3d at 837-38.

*Woods* is clearly distinguishable from this case. As the *Woods* court noted, joyriding is to be treated as criminal trespass to vehicles rather than theft. However, in this case, unlike *Woods*, the defendant's statement to Officer Jamraz was not the only evidence of intent before the court. It cannot be said that here, as in *Woods*, the only conclusion permissible from the evidence before the trial court on that issue was that defendant was merely borrowing the Cadillac rather than intending to permanently deprive its owner of it.

## II

Next, defendant contends that the trial court erred in sentencing him under the Unified Code of Corrections and in denying him a substance abuse evaluation as provided for in the Alcoholism and Substance Abuse Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 6302 *et seq.*), after being advised of his chronic drug use and prior drug overdose.

Section 4.1 of the Act defines an addict as a "person who habitually uses any drug, chemical, substance or dangerous drug other than alcohol so as to endanger public morals, health, safety or welfare or who is so far addicted to the use of a dangerous drug or controlled substance other than alcohol as to have lost the power of self control with reference to his addiction." Ill. Rev. Stat. 1985, ch. 111½, par. 6304.1.

Section 21 provides that an addict charged with or convicted of a crime is eligible to elect treatment under the supervision of certain drug abuse programs instead of prosecution or probation. The addict may elect treatment unless the crime with which the defendant is charged, or of which he stands convicted, or his prior criminal history meet certain criteria, or unless he had previously been admitted to treatment under the Act. Ill. Rev. Stat. 1985, ch. 111½, par. 6321.

Section 23 provides that, if a court has reason to believe that a defendant convicted of a crime is an addict or if he states that he is an addict, and the court finds that he is eligible to make the election provided for under section 21, the court "shall" advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a drug abuse program. Section 23 further provides that, if the defendant elects to undergo treatment or is certified for treatment, the court "shall" order an examination by a drug

abuse program to determine whether he is an addict and is likely to be rehabilitated through treatment. Ill. Rev. Stat. 1985, ch. 111½, par. 6323.

Section 23 further provides that, after such an examination and a recommendation of whether the defendant should be placed on probation and supervision for treatment, the court, if it determines that the defendant is an addict and is likely to be rehabilitated through treatment, "shall" place the defendant on probation and under the supervision of the drug abuse program. However, the court may deny such a disposition if, having regard to the nature and circumstance of the offense, and the history, character and condition of the defendant, it is of the opinion that his addiction and the crime committed are not significantly related or that his imprisonment is necessary for the protection of the public. In the latter case, the court must specify on the record the particular evidence, information or other reasons that led to that opinion. In that case, or if the court finds, *ab initio*, that defendant is either not an addict or likely to be rehabilitated, it is to pronounce sentence as in all other cases. Ill. Rev. Stat. 1985, ch. 111½, par. 6323.

At defendant's sentencing, his attorney stated to the trial court that he was concerned with the fact that defendant had a drug overdose in 1985. He further stated that, although defendant had been in custody since the time of his arrest, defendant still felt that he had "a dependency on drugs." For those reasons, defense counsel requested the court to order an evaluation of defendant to determine if he was an addict and, thus, his eligibility for treatment in a drug abuse program as provided for under the Act.

In response, the trial court initially stated its belief that defendant was not "eligible" for the sentencing alternative provided under the Act. In expressing that belief, the trial court did not clarify whether it was referring to defendant's eligibility for drug abuse treatment in terms of being an addict or in terms of meeting the eligibility criteria of section 21 of the Act, even if he was an addict. However, the trial court's subsequent concession that defendant "may be eligible" and its reference to the fact that defendant was charged with a Class 2 felony and had not been previously admitted to treatment make it clear that it was referring to defendant's eligibility in the latter sense.

After conceding that defendant "may be eligible" for drug abuse treatment and referring to the facts above noted, the court nevertheless concluded:

> "But I don't see any—I don't see putting him on probation [for drug abuse treatment]. I think he can obtain the same

treatment through the *** Department of Corrections, maybe even better because he wouldn't be subject to temptation while he was out. So I'm not going to consider that."[2]

In defending the denial of an evaluation under the Act, the State asserts that the trial court, being cognizant of the Act and having considered it in sentencing defendant, properly exercised its discretion in sentencing him to a term of imprisonment absent any affirmative evidence that he was an addict. In so doing, the State concedes defendant's assertion, prior to sentencing, of a prior drug overdose and a drug dependency and a statement in the presentencing report that he used Valium, cocaine and PCP from 1976 to the date of his arrest but notes that he admitted not having sought treatment while in jail on the offense charged and denied a current use of drugs in the presentencing report. The State asserts that the former assertions of defendant were self-serving statements and thus insufficient to prove him an addict. It further asserts that the latter denial by defendant clearly demonstrated that he was not an addict.

■ Initially, we cannot agree with the State that the trial court's denial of an evaluation under the Act was the result of a proper exercise of discretion. Putting aside, for the moment, our beliefs that the Act does not require "affirmative" evidence of addiction and that a trial court has no discretion to exercise in deciding whether to grant an evaluation if the statutory prerequisites therefor are met, we believe that the questions whether defendant adduced such evidence and whether the court properly exercised its discretion in ruling upon a request for an evaluation under the Act are separate and unrelated. That is, we do not believe that a denial of an evaluation under the Act is defensible as a proper exercise of discretion simply because the defendant failed to present affirmative evidence of addiction. Rather, we believe that, regardless of the amount and quality of evidence presented in support of an evaluation request, a trial court would properly exercise its discretion in denying such a request only where it actually considered that evidence before doing so. Where it does not even consider the evidence in denying an evaluation request, we do not believe it can be held to have properly exercised whatever discretion it had with respect thereto simply because there

---

[2]It is unclear from this statement whether the trial court found no reason to believe that defendant was an addict and thus ineligible to elect treatment for drug abuse, notwithstanding that he was otherwise eligible under section 21 of the Act, or whether it simply failed to determine whether such reason did or did not exist. Regardless of this ambiguity in the record, it is the ultimate denial of an evaluation under the Act which is before us.

was insufficient evidence of addiction.

More importantly, however, we disagree with the State that a trial court has any discretion in deciding whether to grant an evaluation under the Act where the statutory prerequisites therefor have been met, *i.e.*, where a defendant has stated that he is an addict or the trial court is given reason to believe that is the case. Thus, we must determine whether defendant stated that he was an addict or whether the court otherwise had reason to believe that he was an addict, even if the trial court did not reach those questions. *People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961.

As we noted above, in requesting an evaluation under the Act, defendant's counsel expressed his concern with the fact that defendant had a drug overdose in 1985. He also stated that although defendant had been in custody since the time of his arrest, defendant still felt that he had "a dependency on drugs." Additionally, defendant's presentence report stated that he admitted using Valium, cocaine and PCP from 1976 to the date of his arrest. We believe that this evidence was sufficient to have given the trial court reason to believe that defendant was an addict and, thus, to have *required* it to grant defendant an evaluation under the Act whether or not it constituted "affirmative" evidence of addiction. *People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961, which we discuss below, is dispositive of this issue.

In so concluding, we find no support for the State's position in the case law which it cites. As a general matter, we find all but two of those cases distinguishable on the ground that they were decided under the pre-1979 version of section 10 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.10). That statute and section were the predecessors of the Act and section 23 thereof, respectively. Prior to 1979, section 10 of the Dangerous Drug Abuse Act merely provided that, where a defendant stated that he was an addict or the court had reason to believe that he was an addict, it "may" advise him of the drug-treatment option. (Ill. Rev. Stat. 1977, ch. 91½, par. 120.10.) Before 1979, the Dangerous Drug Abuse Act, unlike the Act, thus allowed a trial court to exercise its discretion in deciding whether to allow a defendant to elect evaluation and treatment, even where he had stated that he was an addict or it had reason to believe he was an addict. Concomitantly, it allowed the State to defend a denial of an evaluation as a proper exercise of discretion even where that was the case. (See, *e.g.*, *People v. Warren* (1977), 69 Ill. 2d 620, 373 N.E.2d 10; *People v. Braje* (1985), 130 Ill. App. 3d 1054, 474 N.E.2d 1364; *People v. Rentas* (1980), 83 Ill. App. 3d 543,

404 N.E.2d 479; *People v. Miller* (1976), 43 Ill. App. 3d 290, 356 N.E.2d 1345.) Given the mandatory language of the Act after 1979, however, a denial of an evaluation cannot be so defended where the requirements to invoke a trial court's duty to advise a defendant of his right to elect treatment have been met.[3] (See *People v. Richardson* (1984), 104 Ill. 2d 8, 470 N.E.2d 1024.) That is the case here.

Moreover, we also reject the State's related argument, in reliance upon the same case law, that a defendant's self-serving statement that he is an addict is insufficient to prove him an addict. (*People v. Knowles* (1977), 48 Ill. App. 3d 296, 362 N.E.2d 1087; *People v. Miller* (1976), 43 Ill. App. 3d 290, 356 N.E.2d 1345; *People v. Belleville* (1974), 20 Ill. App. 3d 1088, 314 N.E.2d 35.)[4] The foregoing cases, in so holding, ignore the plain and unambiguous language of the Act to the effect that all that is required to raise a trial court's duty to advise a defendant of his right to elect treatment thereunder is that he state that he is an addict *or* that it have reason to believe that he is an addict. Rather than the foregoing cases, we believe that this court's opinion in *People v. Beasley* (1982), 109 Ill. App. 3d 446, 440 N.E.2d 961, provides the better-reasoned rule of decision in cases such as this.

In *Beasley*, this court reasoned, in addressing the same issue raised by defendant here, that:

> "We note that a mere statement by an eligible defendant that he is an addict entitles him to an advisement of the probation and treatment possibilities under the Act, and believe that consistent with this statutory scheme little should be required to

---

[3]In this regard, we disagree with the two remaining cases cited by the State, *People v. Rohman* (1983), 117 Ill. App. 3d 55, 452 N.E.2d 898, and *People v. Braje* (1985), 130 Ill. App. 3d 1054, 474 N.E.2d 1364, to the extent that, although they were decided after the above-noted amendment of section 10 of the Dangerous Drug Abuse Act, they nonetheless phrased the trial court's duty to advise a defendant of his right to elect treatment thereunder in terms of "discretion." (*Rohman*, 117 Ill. App. 3d at 58; *Braje*, 130 Ill. App. 3d at 1060.) The error of the *Rohman* and *Braje* courts in so doing is traceable to the reliance of the court in *Rohman*, which the *Braje* court cited, upon *People v. Melson* (1976), 36 Ill. App. 3d 71, 343 N.E.2d 258, which was decided when trial courts still had discretion in that regard under the Dangerous Drug Abuse Act.

[4]In so arguing, the State concedes too much. Neither defendant nor his counsel affirmatively stated at his sentencing hearing that he was an addict nor does defendant contend on appeal that he did so. The trial court's denial of an evaluation under the Act is thus not assailable on that ground. However, the question remains whether defendant's arguably self-serving statements concerning his drug abuse, nonetheless, gave the court reason to believe that he was an addict. It is in relation to that issue that we will evaluate the State's "self-serving" statement argument.

give a court reason to believe defendant is an addict. Here Banks testified under oath that he was 23 years old. While in high school he used marijuana. He had used heroin, cocaine, and 'tees and blues' with regularity until his incarceration. This testimony was sufficient to give the court reason to believe Banks was an addict, to require the court to inform him of his election rights under the Act, and to order his examination *** if he so elected." (*Beasley*, 109 Ill. App. 3d at 454.)

This court thus found error in the trial court's denial of an evaluation on the basis of its finding that, in view of certain statements by the defendant concerning his subsequent abstention from drugs, it could be inferred that he was not an addict. We held that the Dangerous Drug Abuse Act required that the expertise of the Department of Mental Health, the body then charged with making evaluations under the Dangerous Drug Abuse Act, be employed in making such a finding. *Beasley*, 109 Ill. App. 3d at 454.

From *Beasley*, we conclude that, notwithstanding their self-serving nature, a trial court must consider a defendant's statements which, while not affirmative statements that he is an addict, are tantamount thereto, in determining whether there is reason to believe that that is the case. (See also *People v. Melson* (1976), 36 Ill. App. 3d 71, 343 N.E.2d 258 (defendant contended that the trial court had reason to believe that he was an addict and appellate court found that the presentence report disclosed a reason to believe that defendant was an addict and contained what were, in effect, statements by defendant that he was an addict).) Applying the rationale of *Beasley* and *Melson* here, the record conclusively reveals that the trial court ignored defendant's statements to the effect that he was an addict or in simply failing to make that determination. This was error.

■ We also reject the State's defense of the denial of an evaluation under the Act on the basis of defendant's denial in the presentence report of a "current" use of drugs. In view of the other indications in the record of defendant's possible addiction to drugs, his denial of a current use of drugs was insufficient to support a finding that there was no reason to believe that defendant was an addict. (See *People v. Miller* (1976), 43 Ill. App. 3d 290, 356 N.E.2d 1345.) Moreover, in so arguing, the State ignores the fact that defendant had been incarcerated from the date of his arrest to the date of his sentencing. We do not believe that a defendant's inability to obtain and use drugs due to his incarceration has any bearing on whether there is reason to believe, given his drug-related conduct prior thereto, that he is an addict. The fact that an incarcerated defendant

does not use drugs during his incarceration should not be used against him in determining whether he is entitled to an evaluation under the Act.

■ Finally, we reject the State's argument that, even assuming defendant sufficiently proved he was an addict, the trial court properly denied him an evaluation based on the factors established in section 23 of the Act, which allow a court to deny a defendant the drug-treatment option. Specifically, the State argues that as provided in section 23, the trial court was aware of defendant's criminal history, *viz.*, a prior conviction for burglary, and that defendant's alleged addiction was not significantly related to the crime charged. In so arguing, the State ignores the fact that the trial court, if it relied upon those factors to deny defendant an evaluation, failed to state on the record the particular evidence, information or other reasons for reaching the latter conclusion, as required under section 23 of the Act. More importantly, however, the State also ignores that the factors provided in section 23 become relevant only after examination of a defendant by a drug abuse program and a finding that he is an addict and likely to be rehabilitated through treatment. (Ill. Rev. Stat. 1985, ch. 111½, par 6323.) As such, we do not believe that they can be properly relied upon to justify the denial of an evaluation under the Act in the first instance.

In conclusion, we find that the trial court had sufficient reason to believe that defendant was an addict and was thus required to order an evaluation of defendant under the Act, given his obvious attempt to elect that option. The court's failure to order an evaluation, whether based on its failure to find sufficient reason to believe defendant was an addict or its failure to even reach that question, was error and not sustainable as a proper exercise of discretion. Therefore, we vacate defendant's sentence and remand for resentencing.

For all of the reasons stated herein, we affirm defendant's conviction, vacate his sentence of imprisonment and remand for a new sentencing hearing consistent herewith.

Conviction affirmed; sentence vacated and cause remanded.

RIZZI and WHITE, JJ., concur.