618 N.E.2d 944 (1993)
245 Ill. App.3d 1043
188 Ill.Dec. 374
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Rudolph JARRELL and George Washington, Defendants-Appellants.
Nos. 1-92-1674, 1-92-1719.
Appellate Court of Illinois, First District, Sixth Division.
June 30, 1993.
*945 Rita A. Fry, Cook County Public Defender, Chicago (James N. Perlman, Asst. Public Defender, of counsel), for Jarrell.
Jack O'Malley, State's Atty. of Cook County, Chicago (Renee Goldfarb, Susan R. Schierl, Theodore R. Jamison, III, Asst. State's Attys., of counsel), for the State.
Presiding Justice McNAMARA delivered the opinion of the court:
Following a joint jury trial, defendants Rudolph Jarrell and George Washington were convicted of burglary (Ill.Rev.Stat. 1989, ch. 38, par. 19-1) and sentenced to five-year terms. On appeal, defendants contend that: (1) the trial court deprived them of a fair trial by failing to determine that they knowingly and intelligently waived their right to be tried separately and by failing to determine, sua sponte, that severance was necessary; (2) the police lacked probable cause to arrest them; and (3) they received ineffective assistance of counsel in that their attorneys failed to challenge the constitutionality of their arrests. In addition, both defendants complain about their sentence. Jarrell contends that his sentence must be vacated because the trial court failed to consider evidence in mitigation. Washington argues that his sentence must be vacated because the trial court failed to determine whether he was eligible for participation in a drug treatment program.
Prior to trial, Jarrell filed a petition for severance, wherein he alleged that Washington's defense was in conflict with and antagonistic towards his own defense, and that severance was necessary to ensure that he received a fair and impartial trial. At the hearing on the petition, defendants' respective counsel informed the court that defendants did not want a severance, but desired to be tried jointly. The trial judge then asked each defendant whether he wished to waive his right to be tried separately, to which each responded affirmatively.
The following facts were adduced at the joint trial. Officer William Filipiak of the Chicago Police Department testified that in the early morning hours of August 21, 1991, he and Officer Eleanor Reardon were patrolling an industrial area in the vicinity of 105th and Throop in Chicago, where a rash of burglaries had recently been reported. At approximately 1:40 a.m., as they approached 10531 South Throop, Filipiak observed defendant Washington walking away from the perimeter fence surrounding Smedberg Machine Corporation. A portion of the fence had been peeled back and was held open by clamps, creating an opening through which people could pass. Washington was carrying a long brass bar as he walked east across Throop Street toward a car parked beside a curb with its hood up. When Washington saw the officers, he dropped the brass bar in a grassy area next to the car. Defendant Jarrell was standing in front of the open hood of the car.
The officers approached the car, which belonged to Jarrell, and observed several more brass bars lying in plain view in the rear seat area. Additional brass bars were later found in the trunk of Jarrell's car. The officers began questioning defendants when they noticed some buckets of tools and clamps as well as a ladder, stamped "Smedberg Corporation," in a weeded area 10 to 20 feet from the car. These items as *946 well as the brass bars, each valued at $2,500, were later identified as belonging to Smedberg.
The officers asked defendants what they were doing in the area. Washington stated that he had just come from a friend's house located less than a block from where Jarrell's car was parked. Reardon proceeded to the house to verify Washington's story. She knocked on the door, but no one answered. Filipiak then called Officer Hofer to the scene. When Hofer arrived, the officers arrested defendants and placed them in the back of the squad car for security purposes. Filipiak and Hofer went to investigate the hole in the fence. They entered the Smedberg property through the hole, and observed a portion of sheet metal that had been torn away from the building's exterior, leaving a hole large enough for a person to enter the building. They also observed that a window had been pushed out.
Reardon transported defendants and the recovered items to police headquarters. Filipiak followed in Jarrell's car. Filipiak subsequently contacted Raymond Overton, the chief electrical project engineer at Smedberg, who came to the police station and identified the brass bars, tools, and ladder as belonging to Smedberg. Overton testified that he had seen the brass bars the day before on the factory floor.
Hofer testified regarding a conversation he had with Jarrell several hours after the incident. After being advised of his constitutional rights, Jarrell told Hofer that he and Washington were together prior to the incident, and that Washington instructed him to drive to the location on Throop. Washington went into the Smedberg building and removed the items that the officers found in and near the car. Jarrell helped Washington carry the items to the car. Jarrell never went inside the building and had never before been to that location.
Hofer subsequently interviewed Washington. Hofer advised him of his constitutional rights, after which Washington gave an oral statement. He stated initially that he and Jarrell had gone to see his brother who lived down the street from the Smedberg factory. When Hofer confronted Washington with the fact that his brother was in the hospital, Washington changed his story and stated that he had gone to his brother's house to find out from his sister-in-law his brother's hospital room number. On the way from his brother's house, he and Jarrell saw the stolen items in the middle of the street, and they stopped to pick them up.
Jarrell testified at trial that on the morning in question, he and Washington were driving from Washington's brother's house when his car overheated at 105th Street and Throop. He raised the hood and removed the radiator cap to allow water and antifreeze to escape. Washington was standing beside him in front of the car while he tried to repair it. Police officers arrived shortly thereafter and began questioning them. The officers inspected the area around his car and discovered the brass bars in the grass. Jarrell denied telling police that he saw Washington carrying anything from the Smedberg building. The brass bars that were found in his car were put there by police after he had been placed in the squad car.
On cross-examination, Jarrell stated that they had just returned from seeing Washington's aunt, not his brother or sister-in-law. He denied telling police that the brass bars were used for work purposes, and denied giving them an oral statement. He stated that the officers were unable to drive his car from the scene, but instead had to push it to the police station.
Defendants first contend that the trial court deprived them of a fair trial by failing to determine and establish of record that their right to be tried separately was knowingly and intelligently waived. Defendants further contend that the trial court had an affirmative duty to determine, sua sponte, that separate trials were necessary, and was obligated to order a severance notwithstanding their express desire to be tried jointly.
In raising the first of these two related issues, defendants acknowledge the lack of any statute or supreme court rule which *947 would require a specific inquiry into this matter. Nevertheless, defendants argue that as a policy matter, we should adopt the approach taken by the courts with respect to the waiver that follows from the entry of a guilty plea. In Boykin v. Alabama, (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, the United States Supreme Court held that in accepting a guilty plea, the trial court has a duty to "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." (Boykin, 395 U.S. at 244, 89 S.Ct. at 1712, 23 L.Ed.2d at 280.) The Court emphasized the importance of this duty in light of the fact that a guilty plea is itself a conviction, with nothing remaining but the entry of judgment and the determination of punishment. It was because of Boykin that our supreme court enacted Supreme Court Rule 402 (134 Ill.2d R. 402), which requires the trial court to make an independent determination of whether defendant knows his rights, and the consequences of relinquishing those rights in pleading guilty to an offense.
As a reviewing court, however, our function is to interpret the law and enforce the law as enacted, not determine what the law ought to be. (People v. Raso (1992), 234 Ill.App.3d 1099, 176 Ill.Dec. 746, 602 N.E.2d 53.) We are not free to impose the same duty in the context of a defendant's waiver of his right to a separate trial that the courts have created in the context of guilty pleas and waiver of rights arising therefrom. We are unaware of any Supreme Court opinion, Illinois supreme court rule, or statute which would place on the trial court the duty of "canvassing" the matter of severance with the defendant to ensure both that he has a full understanding of what a joint trial entails and that he has knowingly and intelligently waived his right to be tried separately.
Nor does the trial court have a duty under existing law to determine, sua sponte, if separate trials are necessary and to order severance in that event, even if to do so would contravene defendants' express desire to be tried jointly. We find Wheat v. United States (1988), 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140, which defendants cite in support of this contention, to be inapposite since the sole issue there was whether a defendant has a sixth amendment right to choose the same counsel as his codefendants, despite the possibility of a conflict of interest which might arise from such joint representation. That is clearly not the issue here.
In Illinois, the applicable statute pertaining to severance provides that if it appears that either a defendant or the State will be prejudiced by a joinder of related defendants in a single charge for trial, the court may order separate trials or grant a severance. (Ill.Rev.Stat.1989, ch. 38, par. 114-8.) Illinois courts have interpreted this statute to require the party requesting a severance to demonstrate before trial how he will be prejudiced. (People v. Byron (1987), 116 Ill.2d 81, 107 Ill. Dec. 192, 506 N.E.2d 1247; People v. Stamos (1991), 214 Ill.App.3d 895, 158 Ill.Dec. 390, 574 N.E.2d 184.) In this case, while Jarrell indicated prior to trial his initial desire for severance, he later changed his mind against the advice of counsel and, along with Washington, indicated to the trial court a desire to be tried jointly. The trial court questioned them separately to verify their wishes. Neither defense counsel objected to the trial court's subsequent ruling granting defendants the joint trial they had requested. As with any other right, the right to be tried separately may be waived, and a failure to move for severance forecloses any claim of prejudice which may have resulted from a joint trial. (People v. Appold (1976), 39 Ill.App.3d 814, 350 N.E.2d 511; People v. Rutledge (1973), 14 Ill.App.3d 290, 302 N.E.2d 425.) In light of the foregoing, we find no error in the trial court's grant of defendants' request to be tried jointly.
Defendants also argue, for the first time, that the police lacked probable cause to arrest them. It is well-established that where the contention that a defendant was arrested without probable cause was not made in a motion to suppress during trial, *948 or in a post-trial motion, and the issue is raised for the first time on appeal, the claim of error is waived. (People v. Accardo (1985), 139 Ill.App.3d 813, 93 Ill.Dec. 839, 487 N.E.2d 664.) However, since defendants assert that their respective trial counsel did not provide them with effective assistance because they failed to properly preserve the issue of the illegal arrest, we will address the issue of probable cause in resolving defendants' ineffective assistance claim.
Probable cause exists where the facts within the arresting officer's knowledge are sufficient to warrant an individual of reasonable caution to believe that the person arrested has committed an offense. (People v. Stewart (1991), 217 Ill.App.3d 373, 160 Ill.Dec. 299, 577 N.E.2d 175.) The officer may rely on his knowledge and experience to draw reasonable inferences from observed facts. (People v. Lee (1986), 151 Ill.App.3d 510, 104 Ill.Dec. 136, 502 N.E.2d 399.) Probable cause requires more than mere suspicion that a defendant has committed or is committing an offense, but it does not require the arresting officers to possess evidence sufficient to convict the defendant. In re D.G. (1991), 144 Ill.2d 404, 163 Ill.Dec. 494, 581 N.E.2d 648.
Filipiak testified that defendants were placed under arrest when he and Reardon placed them in the squad car. This occurred before he and Hofer went onto the Smedberg property to investigate. Accordingly, we will look to the facts then known to the officers to determine whether probable cause existed to arrest defendants.
When the officers approached the scene which they knew was an area in which a rash of burglaries had recently been reported, they observed Jarrell's car parked across the street from the hole in the fence surrounding the Smedberg factory. They saw Washington walking away from the fence carrying a brass bar. He was three to five feet from the fence when the officers first spotted him, and was headed for Jarrell's car. When he saw the officers he immediately dropped the brass bar. Jarrell was standing outside the car in front of the open hood. The officers saw several more brass bars lying in plain view in the rear seat area of Jarrell's car, and later saw more such bars in the trunk. Jarrell told the officers that the brass bars were used by him for work purposes.
As the officers were questioning defendants, they observed buckets of tools and clamps as well as a ladder stamped "Smedberg Corporation" lying near the car. They also noticed the hole in the fence which was large enough for a person to walk through and was being held open by two clamps. When the officers asked Washington what he was doing in the area at that time in the morning, he said he had just come from the house of a relative who lived nearby. He pointed to a house where his relative allegedly lived, but when an officer knocked on the door, no one answered.
Based on the foregoing, we find that a reasonable person of caution would conclude that defendants were committing the offense of burglary. In support of their contention that the officers lacked probable cause to arrest them because they had not yet verified that a crime had been committed, defendants cite People v. Rodriquez (1987), 153 Ill.App.3d 652, 106 Ill.Dec. 523, 505 N.E.2d 1314. In that case, this court held that "[w]here the police merely suspect defendant has committed a crime and arrest him before commission of the crime is verified, the arrest cannot be sanctioned." (Rodriquez, 153 Ill.App.3d at 659, 106 Ill.Dec. 523, 505 N.E.2d at 1319.) Here, however, there was far more than mere suspicion: that criminal activity was afoot. The police officers had probable cause to arrest defendants.
Having determined that the officers had probable cause to arrest defendants, we turn briefly to defendants' ineffective assistance claim. They base this claim on defense counsels' failure to raise the issue of probable cause for the arrest. Our review of the record, as discussed above, indicates that a probable cause challenge would not have been favorably met. Because we have found that the officers had probable cause to arrest defendants, we *949 necessarily find defendants' ineffective assistance of counsel claim to be without merit.
Jarrell also contends that his sentence must be vacated because the trial court failed to consider mitigating factors when it sentenced him to a five-year term of imprisonment. The determination of the appropriate sentence to impose in a given case is a matter within the sound discretion of the trial court, and its decision will not be overturned absent an abuse of that discretion. (People v. Wilson (1991), 143 Ill.2d 236, 157 Ill.Dec. 473, 572 N.E.2d 937.) The Illinois Constitution requires that "all penalties should be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, Art. 1, Sec. 11.) The trial court is not required to articulate the process by which it concluded that the penalty imposed was appropriate, nor is it required to articulate its consideration of mitigating factors. People v. BoClair (1992), 225 Ill.App.3d 331, 167 Ill.Dec. 606, 587 N.E.2d 1221.
The statutory penalty range for burglary, a Class 2 felony (Ill.Rev.Stat. 1989, ch. 38, par. 19-1), is from three to seven years of imprisonment. (Ill.Rev. Stat.1989, ch. 38, par. 1005-8-1(a)(5).) The trial judge sentenced Jarrell to a term of five years, which is mid-way through the range of possible sentences. At the sentencing hearing, the trial judge was presented with factors in aggravation, which included several prior misdemeanor and felony convictions. She was then presented with factors in mitigation. While she articulated her desire to impose the same sentence on both defendants, the fact that she did not articulate for the record her consideration of the aggravating and mitigating factors does not mean that she did not consider them in arriving at an appropriate sentence. Given Jarrell's criminal background, which includes four theft and related convictions, we cannot say that the trial judge abused her discretion in sentencing Jarrell to five years' imprisonment.
Finally, Washington contends that the trial judge improperly failed to consider the Treatment Alternatives to Street Crime (TASC) program as a sentencing alternative after she was informed that he was addicted to heroin. The State agrees and confesses error on this point. (See People v. Henry (1990), 203 Ill.App.3d 278, 148 Ill.Dec. 608, 560 N.E.2d 1205.) Consequently, we vacate his sentence of imprisonment and remand for a new sentencing hearing consistent herewith.
Accordingly, as to defendants' convictions and Jarrell's sentence the judgment of the circuit court of Cook County is affirmed. As to Washington's sentence, the matter is remanded for a new sentencing hearing.
Affirmed in part, vacated in part and remanded.
EGAN and GIANNIS, JJ., concur.